OLIVER AMES, Respondent, *vs.* THE MISSISSIPPI BOOM COMPANY, Appellant.

APPEAL FROM THE DISTRICT COURT OF WASHINGTON COUNTY.

The report of a referee upon the whole issue stands as the decision of the Court, and the party desiring to review the same should perfect judgment, and then bring his appeal or writ of error.

Upon the coming in of the report of a referee ordering judgment for Plaintiff, the Defendant moved for judgment in his favor upon a case made and the report. The Defendant appealed from the order denying the motion. There was a stipulation in the case " expressly waiving any and all irregularities in the mode and manner of taking said appeal," &c. *Held,* that the stipulation was a waiver of the irregularity in taking the appeal from the order.

In an action for the claim and delivery of personal property, the Plaintiff cannot succeed unless he can identify the specific property of which he claims the right of possession. And this, though the Defendant may have so mingled the property with other belonging to himself, as to render the same undistinguishable.

Points and Authorities of Appellant.

I.—The Plaintiff has mistaken his remedy. Replevin will not lie where the title to the chattel can only be shown by proving the title to the land from which it was severed. Otherwise, where the Plaintiff is in the actual possession of the land, as possession will be sufficient to enable him to maintain the action. *Morris on Replevin*, 57, *and cases there cited*; 8 *Cow.*, 220; 2 *Watts*, 126-7.

II.—An action for the recovery of specific personal property is a proceeding *in rem*, and proof of identity of the particular property claimed is just as essential to the maintenance of the action as proof of the right of property or of the right of possession. The Plaintiff, therefore, having failed to identify the property claimed in this action, cannot recover, and the judgment must be reversed and judgment for the Defendant. *Morris on Replevin*, 53, *and cases there cited* ; 4 *Bouvier's Institutes*, secs. 3553-8; *Comp. Stats.*, *pp.* 548-9; *also p.* 566, *sec.* 70; 2 *Rawle*, 427; 13 *Ill.* 192; 30 *Maine*, 370; 5 *U. S. Dig. p.* 299, *sec.* 286; 1 *Mann* (*Mich.*) 92; 1 *Duer*, 101; 10 *U.S. Dig.* 407, *sec.* 2; 11 *U.S. Dig.*, 403, *sec.* 2.

III.—That in the action of replevin the issue is upon the property seized by the officer executing the writ, and the Plaintiff must stand or fall by that issue, and if he fails to show his right to the possession of the property so seized, judgment must go for the Defendant. 1 *Phil. Ev.*, 211; 18 *Penn. State R.*, 91; 7 *Ohio*, 127.

IV.—Although the rule of *caveat emptor* generally obtains in this country upon a sale of personal property, yet that rule is no longer applicable where the Legislature has established a registry for any particular species of chattels. If, independent of the registry, a party has possession of a chattel, and of those *indicia* which imply a right to sell, then a sale by such person would bind the real owner. Here all the *indicia* showed title in Wood, at the time of the sale to Berthold, Rozier & Co., and they must either be protected in their pur-

chase, or the rules of law and the provisions of the statute be nullified. *Morris on Replevin*, 49, *and cases there cited.*

BRISBIN & WARNER, Counsel for Appellant.

D. COOPER, Counsel for Respondent.

*By the Court.*—ATWATER, J.—This was an action of replevin, to recover 600,000 feet of pine saw logs, of which Plaintiff claimed to be owner, and entitled to the immediate possession. The Defendant denied the material allegations of the complaint, and set up title to the logs in a third party, and claimed right of possession by virtue of a lien on the same for boomage.

The cause was referred to W. Wilkin, Esq., who reported that the Plaintiff was entitled to judgment for 126,622 feet of the logs claimed, or the value thereof, assessed at $506 48-100. Upon the coming in of the report the Defendant made a motion for judgment in favor of the Defendant, on the report and case made, the order for judgment in the report to the contrary notwithstanding. The motion was denied, and from the order entered thereon, the Defendant appeals to this Court.

The Plaintiff urges the objection, that the motion for judgment in favor of the Defendant notwithstanding the order for judgment for Plaintiff, was irregular and improper, and that the Defendant could only appeal from the judgment entered upon the order.

This view would seem to indicate the correct practice in cases of this kind. *Sec.* 4, *Comp. Stat.*, *p.* 564, provides that the report of the referees upon the whole issue, stands as the decision of the Court, and judgment may be entered thereon, in the same manner as if action had been tried by the Court ; and their decision may be reviewed in like manner." Upon referring to the proceedings in a trial by the Court, *Sec.* 41, *p.* 562, *Compiled Statutes*, provides that " in giving the decision, the facts found and the conclusions of law must be separately stated ; judgment upon the decision must be entered accordingly." In the case of trials

before a jury, provision has been made for a stay of entry of judgment upon the verdict, for the purpose of moving for a new trial, for judgment notwithstanding the verdict, &c. ; but we find no provision for stay of entry of judgment when the case has been tried by the Court or referee.   On the contrary, it is declared that upon the decision judgment must be entered accordingly."   The correct practice in such case is to perfect the judgment of record, when either party may appeal from the same.

We think, however, under the stipulations accompanying the papers, the Respondent is not in a position to urge this objection.   It seems that the case was settled by stipulation, and the motion below was made on the report of the referee and case made.   There is also a stipulation in regard to the appeal to this Court, waiving the performance of certain things required by statute, and also " hereby expressly waiving any and all irregularities in the mode and manner of taking said appeal, and making return thereof to the Supreme Court."   We think this stipulation broad enough to cover the error complained of by Respondent.   It is an irregularity of form, rather than an error of substance, and it does not appear that any prejudice is suffered by the Respondent in allowing an appeal from an order for judgment, instead of from the judgment itself as perfected of record.   The questions of law to be reviewed are the same, in whatever manner the appeal comes up, and under the stipulation we do not feel justified in dismissing the appeal, as we think the fair inference from the stipulation is, that the parties intended to submit the case to this Court for the purpose of reviewing the errors alleged to have been committed by the referee.

The Plaintiff offered evidence showing, or tending to show, that he purchased the logs in question in 1858, of Heubner & Longaker, upon whose lands these logs were cut without the permission or consent of the owners, by Smith & Sands, in the winter of 1858. These parties also cut logs on lands belonging to other parties than those above-named, in the same vicinity. Smith & Sands used two different marks for the logs cut by them that winter, called " diamond girdle diamond," and " S. girdle H." These logs were drawn and landed on Stanch-

field brook, a tributary of Rum river.   The referee has found that 488,111 feet board measure of logs bearing these marks, and cut by said parties, came into the boom of the Defendant, and that 138,872 feet of these logs were cut on lands owned by Heubner & Longaker, and that " they were mixed by the parties cutting them with the other logs cut by them in said Town thirty-seven (37), and having the same marks, and being of the same value per thousand feet, in such a way as to be undistinguishable from said last mentioned logs." No evidence was offered by the Plaintiff for the purpose of identifying the logs claimed by him under his purchase from Heubener & Longaker, nor was any attempt made to distinguish them from other logs in the possession of the Defendant, bearing the same marks, to which the Plaintiff laid no claim.

Upon this state of facts, the Defendant urges that the Plaintiff cannot recover in this action.  We think the objection well taken.   The action under the Code for the " Claim and Delivery of Personal Property," is, in substance and effect, the former action of replevin.    That was an action *in rem*, and by the common law the judgment was *pro retorno habendo*, and it is only by statute that a personal judgment can be given in this action.   Formerly, the only or chief object of the action was to controvert the legality of a distress.   Its scope has been enlarged by later legislation, but the nature of the action is substantially unchanged, and the fundamental principles formerly applicable to the action, and the essential requisites to sustain it must still be recognized.   The action of replevin sought the specific goods, and was fruitless unless the goods were seized, or other goods taken from the Defendant by *capias in withernam*, as a substitute for those distrained, on the distrainor having *eloigned* the latter beyond the reach of the Sheriff.   This provision for seizing other property in lieu of that originally taken by the Defendant, has not been retained in the action provided for under the Code, but a substitute therefor seems to have been adopted by *Sub.* 3, *sec.* 95, *Comp. Stat., p.* 545, which provides for an arrest " in an action to recover the possession of personal property unjustly detained, where the property, or any part thereof, has been concealed, removed, or disposed of, so that it cannot be

found or taken by the Sheriff." 5 *How. Pr.*, 152, 3 *Sand.*, 707.

Identification of the property seems always to have been regarded as an essential requisite to the maintenance of this action, that is, that the Plaintiff must show the specific property in the hands of the Defendant, to which he claims the right of possession, and not, simply, that he has a certain amount of property, or number of articles of the same kind and value. And so it has been held that replevin will not lie for so many silver dollars or golden eagles ; though money in a box, or leather made into shoes, may be recovered in this action *if sufficiently identified.* *Morris on Replevin,* 53 ; *Snyder vs. Vaux,* 2 *Rawle,* 427 ; 13 *Ill.*, 192 ; 7 *Cow.*, 95 ; 5 *Johns.,* 348.

In *Snyder vs. Vaux* it was held, that if the Plaintiff fail to prove the identity of the property in question, or, in other words to show that the original materials were the same which belonged to him, he cannot recover. In the case at bar the Plaintiff has been unable to prove that a single log claimed by him was cut upon the land of the parties under whom he claims. And no case is cited by Plaintiff which holds that a party, failing to prove or identify the particular property claimed by him, is entitled to a judgment against the Defendant for an equal number of articles of the same kind and value.

But the Plaintiff claims that he is relieved from the effect of the rule requiring him to identify this property, from the fact that the parties who cut these logs were trespassers, and that the logs were intentionally mingled by them, and that the burthen of proof was on the Defendant to identify the logs, or prove that none were cut on the lands of Heubner & Long-aker. I think the Plaintiff is mistaken in this position, for two reasons, first, because in this action the Plaintiff can only succeed by establishing his own right to the possession of the property, (incident to which is identification,) and not by showing lack of title in Defendant ; and, second, because we find no evidence to sustain the finding of the referee, that these logs were mixed by the parties cutting them with other logs, in such a way as to be undistinguishable.

It is to be borne in mind that the main purpose and object of the action of replevin, (the name which we prefer to use, as being much more convenient and significant to the professional reader than that adopted under the code for this action) was to give the Plaintiff his identical property, or that of which he was entitled to the possession. And the remedy afforded by this action is often of the highest importance, since it not unfrequently occurs, that no amount of damages which could be recovered by legal rules, would compensate a party for the loss of the particular property taken or detained. Hence, where A unjustly takes my horse, or a bushel of my wheat, the law permits me to reclaim the same property, so long as I can identify or point out the articles. But suppose the horse has been turned into a drove of a hundred others exactly like, or the wheat into a bin with other wheat, do we find any countenance in the law that I may seize another horse or another bushel of grain in lieu of that taken from me? The identity of the thing being lost, its peculiar value to me has also been lost, and the reason which permitted the taking the identical property, does not apply to the taking of the property in kind. The main object of the action is not to furnish security for the loss of the property, or to punish the wrong doer, (though both may be incidental to it) for another form of action has been provided with express reference to this end. The identity of the property has been as entirely destroyed by the mingling as though it had been burned up.

But it is urged by the Plaintiff that this destruction of the identity of the property was by the wrongful act of the Defendant (or those under whom it claims) and therefore it cannot object that the Plaintiff should seize other articles of the same kind and value. But the same reasoning would permit the Plaintiff to do the same thing, even though the Defendant had entirely destroyed the property claimed by Plaintiff. The wrong is certainly as great, where the Defendant has destroyed or removed the property entirely beyond the reach of the Plaintiff, as where he has destroyed the identity of the article, although the thing itself may actually exist, and be in the possession of the Defendant. If the Plaintiff be entitled to articles in kind, because of the wrongful act of the Defendant,

it would seem he should be permitted to maintain his action in the former case as well as the latter. And yet we understand the practice to be well settled, that an action to recover personal property cannot be maintained where the Defendant has not in fact or in law possession or control of the property detained. *Roberts vs. Randel, 5 How.*, 327; *Bradley vs. Gamelle, 7 Minn.*, 331. Or, if the action can be maintained, it would seem that the remedy would be confined to the arrest of the Defendant, rather than seizing in the first instance, and demanding judgment for property in kind. The question here is not as to whether the Defendant can acquire any right of property in the thing taken by him, by destroying its identity, but whether the Plaintiff can reach his property, or other similar property by this form of action. While the right of property is not destroyed by destroying its identity, I think the right to the remedy provided by this form of action is lost, and that the Plaintiff is confined to his action for the value of the property and damages.

But I think the doctrine of the "confusion of goods" not applicable to this case, since I find no evidence in the case that the parties who cut these logs, so mingled them with other logs belonging to them that they were undistinguishable. It clearly appears from the evidence that the logs cut by Sands & Smith in the winter of 1858, were hauled to different landings on Stanchfield brook. It nowhere appears in evidence, that the logs cut on lands owned by Huebner & Longaker, were piled together with logs cut on lands belonging to other parties. If any inference on the subject could be admitted, it would rather be that they were not so piled, since the hauling from each quarter section, would probably be to such point on the brook as was nearest that quarter section. And equally devoid of evidence is the case, that the logs were mingled by Smith & Sands, or either, in driving. It appears in fact, that the logs were driven by the Plaintiff, that is, that he employed the Thompsons to drive them for him. John Thompson, a witness for the Plaintiff swears that "they," (the logs) "were driven in the spring of 1859. I saw them at the time on Stanchfield brook. I started them and had charge of the drive. I found the logs at the landings and in

the brook where we had left them, and saw them before during the summer. I drove them from the landing to the Saint Paul Boom," &c. On his cross-examination he says, " Did not drive any that winter (1858). They laid where they were cut till 1859, except a few that had drifted down. Should think two-thirds of them were afloat when we went to commence the drive. Those afloat were at or near the original landings," &c. And again he says, " the logs cut on these lands were the logs lying at and near the landings on Stanchfield brook, in the spring of 1859. These landings are the places to which the logs were drawn from the stump, and the logs I refer to are the logs I drove from these landings in 1859. I had charge of them at the drive. I believe they were in charge of no one from the time I hauled them there until I went to the drive."

Geo. W. Thompson, another witness for the Plaintiff, also swore, that he drove the logs for the Plaintiff in the spring of 1859, and repeatedly, and in the most positive terms, stated that the logs were driven " from where they had been landed by the loggers on Stanchfield brock."

The only testimony tending to show that the parties who cut these logs had anything to do with them after they were delivered at the landings, is that of Henry, who swears (in his deposition) that they were commenced to be driven in the spring of 1858 by Benj. Smith, and were finally driven by Oliver Ames and Geo. W. Thompson to boom at St. Paul." He mentions neither any number nor any distance to which any of the logs were driven by Smith, nor whether any of the logs claimed by Plaintiff were included in any which he commenced driving. Berry, another witness, who had been employed to survey these logs in August, 1858, says: "These logs at the time I surveyed them, were lying as follows : from 50,000 to 75,000 feet were on the landings where they were hauled. I know the landings by their being at the end of the roads and the skids which were laid down to place the logs on. The remainder of the logs were lying in the brook, commencing, as near as I can remember, about two miles below the upper landing, on said stream, and scattered along the brook from eight to ten miles, as the brook runs, to which

place they appeared to have been driven, which was indicated by the logs being between the banks of the brook, and all driven clean from the upper landing to the upper place on the brook where I found them." This witness does not pretend to state who drove the logs to the place named, if indeed they were driven at all.

This is all the testimony we find in the case to sustain the finding, that the parties who cut the logs claimed by Plaintiff mingled them with other logs in such a way as to be undistinguishable. And as it appears that the case contains all the evidence and admissions submitted and received on the trial of the action, unless the evidence above cited furnishes proof of wilful confusion of the chattels, such evidence does not exist, or rather, was not produced before the Referee. We think the evidence entirely fails to show that the confusion was made by the parties cutting the logs, and that the evidence tends strongly to show that it was effected by the driving the logs, or at least the inference from the testimony would favor that conclusion.*

The order denying the motion is reversed, and judgment ordered for the Defendant.

Chief Justice EMMETT dissents.

---

* This appeal was from the District Court of Ramsey County, and not from Washington County, as stated at the head of the case.