CITY OF DETROIT *v.* C. H. LITTLE CO.

1. SAVING QUESTIONS FOR REVIEW — OBJECTIONS NOT MADE AT TRIAL.

On error to review proceedings for the assessment of damages caused by a change of the grade of certain streets in the abolition of railroad grade crossings, grounds of objection to the right of a claimant to recover damages, not suggested at the trial, will not be considered.

2. EMINENT DOMAIN — GRADE CROSSING — SEPARATION OF GRADES —DAMAGES—LEASEHOLDS.

A tenant's term is "property" for injury to which he is entitled to compensation under sections 4229 et seq., 2 Comp. Laws, providing for the separation of highway and railroad grades.

3. SAME—RELEASE OF DAMAGES.

Where a lessee from a railroad company of certain property, injured by the separation of grades in the abolition of railroad grade crossings, was not a party to an agreement between the city and the railroad company, by which the latter waived all damages to abutting property owned or controlled by it, the city was not thereby relieved from liability to the lessee for injuries to the leasehold.

Error to the recorder's court of Detroit; Phelan, J. Submitted October 12, 1905. (Docket No. 46.) Decided November 7, 1905.

Petition by the city of Detroit for the separation of grades and the abolition of grade crossings over certain railroads, in which the C. H. Little Company was permitted to intervene and claim damages to a leasehold. There was judgment for petitioner on a verdict directed by the court, and claimant brings error. Reversed.

*Willard E. Warner,* for appellant.

*P. J. M. Hally* (*T. E. Tarsney,* of counsel), for appellee.

MOORE, C. J.   Several years prior to August, 1903, the C. H. Little Company established a yard on the south side of Michigan avenue, in Detroit, at the crossing with the Lake Shore & Michigan Southern Railroad, where it dealt in sand, lime, mortar, stone, and other building and paving materials.   It maintained the yard several years, and had erected a large warehouse and stables, put in a set of 10-ton platform scales, and had other utilities for the conduct of its business.   It occupied the premises under a lease from the Lake Shore & Michigan Southern Railway Company, which lease contained a clause for its renewal from year to year; the last renewal being for one year from April 19, 1903.   For the purpose of separating the grades upon certain streets in Detroit, the city entered into an agreement, the material portions of which are as follows:

"Agreement made this third day of July, 1903, between the city of Detroit, party of the first part, and the Michigan Central Railroad Company, the Lake Shore & Michigan Southern Railway Company and the Grand Trunk Railway Company, of Canada, hereinafter called the 'Railroad Companies,' and the Detroit United Railway Company, hereinafter called the 'Street Railway Company,' parties of the second part, witnesseth:

"*Whereas*, the city desires to discontinue, as soon as may be reasonably practicable, the grade crossings in the said city of Detroit at the intersections of the several streets, in the district between Woodward and Michigan avenues, inclusive, with the rights of way owned, used or occupied by the said railroad companies, and to substitute therefor overhead crossings by said railroads, and the parties thereto, by their duly authorized representatives, have agreed upon a uniform profile, fixing the level to which the tracks of the said railroad companies shall be elevated, to provide for the separation of grades of the several streets, and have reached an argreement determining the method, the terms, and the conditions of, and general specifications for, effecting such changes in said crossings, and in furtherance of such general arrangements have now agreed upon the particular plans and specifications therefor,   *   *   *   at the crossing of the tracks of the said Lake Shore & Michigan Southern Railway Company and Grand Trunk Railway of Canada:

" Now therefore, in consideration of the premises and the mutual undertakings of the parties hereinafter expressed, it is agreed:

" 1. That the city of Detroit shall, by proper ordinance, adopt the line shown on the profile, as the profile permanently fixing the levels for said district, to provide for the separation of the grades of the streets at present opened and used, within the limits of said district, and the city hereby covenants and agrees that the separation of grades at all street crossings in said district shall be effected hereafter by lowering the grade of the streets sufficiently to allow the streets to pass under the railroad tracks when so elevated.

" 2. That the city shall, from time to time, by proper ordinances, whenever required for the separation of grades, change and lower the grades of the several streets now opened and used across said right of way, so as to permit the separation of grades in accordance with said profile and shall thereby authorize the construction of the said railroads overhead across such new grades, and shall, and does hereby, assume the payment of all abuttal damages, to property or persons, other than said second parties, arising in any way from such change of grade, and all cost, expense, charges, or liability in any proceedings which may be instituted to effect such separation or which may be instituted to prevent the performance of this agreement, it being understood that the performance on their part of this contract shall release and discharge said railroad companies from any and all assessments, charges, damages, or liabilities and be accepted as a full discharge and acquittal of all obligations, present or future, to abutting owners, or arising from the failure of the city to adjust or pay such damages, costs and expenses in connection with such grade separation and changes of grade, and the city hereby assumes to itself and agrees to pay and assume and indemnify and save harmless the said second parties from and against all such assessments, damages, costs or expenses, except for construction, without charge, recourse to, or recharge over against said second parties, or any of them, and the parties of the second part hereby waive any and all claim for damage by reason of the change of grade of any of said streets to any abutting property owned or controlled by them, or any of them.

"3. In consideration thereof, the second parties shall

construct and build the entire work involved in said changes of grade and all excavating, paving, and repaving, etc. The work to be done by said second parties shall include all excavations necessary or made necessary by the said change of grade as well on the intersecting streets as on the streets crossed. All such work to be done in accordance with the said profile and the general specifications.   *   *   *

"11. The city shall, as soon as practicable, by proper ordinance, change the grade of said Michigan avenue at said crossing, and the said city shall and does agree to assume and perform, with respect to the work of the separation of grades, all of the undertakings and obligations hereinbefore mentioned, to be kept and performed by said city."

In August, 1903, the separation of grades work began, at which time the buildings, scales, and utilities of the appellant were removed to the north of said Michigan avenue, and its yard abandoned, owing to the deep excavations in said avenue and the loss of ingress and egress to and from said yard.

The C. H. Little Company sought to recover damages because of the change of grade. The city claimed that as the C. H. Little Company's yard and business were on railroad property that because of the agreement of the railroads with the city the claimant could not recover. The claimant sought to show its damages, when objection was made to his introducing testimony. The following then occurred:

"*Mr. Warner:* I have a small claim here, and would not want to have all the testimony in the case written up to appeal this claim.

"*Mr. Hall:* You have your right to appeal. You have but about three pages of record for your claim. You can take it up on your offer.

"*The Court:* I think I will do that. I think I will allow Mr. Warner to offer it and I will exclude it. I don't think it a proper element, in view of the agreement between the company and the city.

"*Mr. Warner:* I offer to show our damages, expecting to show with reference to the damage of the C. H. Little Company.

" *The Court:* I suggest, Mr. Warner, you make that offer in the form of a typewritten statement and submit it as a part of the record and save time, and you can make it more accurately.

" *Mr. Hall:* Then I object to that testimony.

" *The Court:* He offers to show, I understand, that the damage to his client amounts to $1,807.40, by reason of the construction of the grade.

" *Mr. Hall:* I admit that they would show items of damage to that amount.

" *Mr. Warner:* Do I understand that you admit the claim of the C. H. Little Company for its damages by that separation matter amounts to that sum of $1,807.40 ?

" *Mr. Hall:* Well, I admit that the testimony of the claimant's witnesses will show its damage to be that amount.

" *Mr. Warner:* Then I will rest under that admission as to the amount of this claimant's damage.

" *Mr. Hall:* The record should also show that they moved, prior to the separation of grades, over to the identical property upon the opposite side of the street belonging to the railroad company.

" *Mr. Warner:* The total element of damage is entirely caused by the removal. It makes no difference whether they were moved from the railroad property to another piece of railroad property or elsewhere.

" *Mr. Hall:* Then you admit that, don't you ?

" *Mr. Warner:* That is a fact that they did, but that has nothing to do with it in mitigation of damages."

·Acting upon the suggestion of the judge, an offer in writing was filed and is incorporated in the bill of exceptions, containing, among other things, the following :

" That its damage consisted of the cost of removal of its buildings consisting of a warehouse and stables adjacent thereto, being about 24 feet by 140 feet in dimensions, and the removal of its platform ten-ton scales; the cost of necessary changes to said buildings and scales to accommodate them to its new location; the cost and wages of extra help during the period of such removal; the damage to said buildings by reason of such removal; and the loss of time and the value thereof to its teams, wagons, and men during the period covered by the actual work incident to the said separation improvements, it eliminating any and all claims for loss of profits to its said business

suffered by reason of its interruptions by said improvements, the same being, in this instance, incapable of calculation."

The judge directed a verdict for the city. The case is brought here by writ of error.

It is the claim of the appellant that it was entitled to recover damages for whatever injury was done it, and that under the proofs and the admission made in the lower court a judgment should be entered here for $1,807.40. Counsel for the city say:

"Appellant is not entitled to the relief sought for, for the following reasons:

"1. Before the work of the separation of grades commenced the appellant company voluntarily abandoned the property abutting the improvement.

"2. The damages now asked for it would itself have been compelled to pay at the termination of its lease eight months from the date of its removal.

"3. Appellant occupied land belonging to one of the railroads, and by an agreement with the city of Detroit the railroad expressly waived all damages suffered by it on any property owned or controlled by it, and the statute does not give the right to recover under those circumstances.

"4. In any event the elements of damage submitted are not the elements which go to make up the value of a 'term' in the event of the eviction of a tenant."

As to the first, second, and fourth of these propositions, it may be said that they were not suggested upon the trial below. Had they been, it is likely we would have a different record here.

Is the claim of the city that the appellant is not entitled to damages well taken? It has been repeatedly held that a tenant's term is property. See *Allison* v. *Chandler*, 11 Mich. 542, and the cases there cited. These proceedings were brought under section 4229 and succeeding sections of the Compiled Laws. Section 4239 provides for the filing of the petition for the purpose of the separation of grades, "and for making just compensation to all parties sustaining damage thereby," and the petition shall

contain the names "of all persons interested as mortgagees, lessees or otherwise in the properties of such companies of the owners and others interested in the property, * * * including those in possession of the premises." The petition shall ask that a jury be summoned to ascertain the necessity, etc., and "to ascertain and determine the just compensation to be made * * * to the persons interested in said abutting property." Section 4244 provides that the jury shall ascertain and determine the amount of damages to such property "as may be damaged thereby, * * * and shall award to the parties interested compensation for such damages. * * * And the said jury shall assess in their said verdict the total compensation by them awarded for damages for such property as may be damaged by such improvements to the parties interested therein." The language of the statute is sufficiently broad to take care of the interests of the appellant company. See, also, section 2, art. 18; section 14, art. 18; section 9, art. 15—of the State Constitution. The appellant was in possession under an existing lease. It was no party to the agreement between the city and the railroad companies. Its rights were not and could not be taken from it by the agreement entered into between them. The judge should have allowed the case to go to the jury. We do not think, however, the record presents the question of the amount of damages in such a way as to justify us in entering a judgment in this court.

Judgment is reversed; and new trial ordered.

MCALVAY, GRANT, BLAIR, and OSTRANDER, JJ., concurred.