CONRAD SEABLOOM v. ETHEL KRIER AND ANOTHER.[1]

March 9, 1945.

No. 33,879.

[1]Reported in 18 N. W. (2d) 88.

*Frank J. Danz* and *Frank T. O'Malley,* for appellant.
*Bundlie, Kelley & Finley,* for respondents.

JULIUS J. OLSON, JUSTICE.

By condemnation, the highway department acquired a part of plaintiff's farm for highway purposes. A small triangular tract containing about 0.31 of an acre was occupied by defendants under a year's lease beginning July 16, 1942, at an annual rental of $800, payable in monthly installments. Within and upon the leased area was located a building known as "The Spinning Wheel," which was and for several years prior thereto had been devoted to the business of a restaurant and tavern. Defendants had acquired from one Miller the trade, the fixtures, and various other items of personal property at that time. The purchase included the goodwill of the business as a going concern, Miller having operated the place several years. The name and fame of "The Spinning Wheel" go back to 1934.

Immediately upon making the purchase, defendants entered into their lease with plaintiff, took possession of the premises, and proceeded forthwith to operate the businesses mentioned. They used and occupied a substantial part of the building as living quarters for themselves and their family. Thus they continued until October 6, when the highway department, by the condemnation suit, took over the real property.

Commissioners were duly appointed to determine the value of the property so taken. They made an award of $7,850, designating plaintiff and defendants as parties in interest of the property, but they made no apportionment of the amount each was to receive. There was no appeal from the award, and, the time to appeal having expired, the state on March 9, 1943, pursuant to Minn. St. 1941, § 117.10 (Mason St. 1927, § 6546), deposited the aforementioned sum with the clerk of the court having jurisdiction of the condemnation proceedings. The interested parties were unable to agree upon a division; hence this action was brought to have that issue determined. During the pendency of this action, counsel

agreed that out of the award $1,200 should be left with the clerk to abide the result of the action, the remaining amount to be paid to plaintiff. Trial was then had, and the court found that by reason of the taking of defendants' leasehold estate they should receive $800, "the fair market value" of their interest, and they were awarded this amount with costs and disbursements out of the fund withheld. The remaining part of the gross award, $7,050, was found to represent plaintiff's "just and fair" share of his interest in the property taken.

Plaintiff's motion for amended findings or a new trial was denied. Judgment was then entered in conformity with the findings, and plaintiff appeals from the judgment.

In his brief plaintiff says there is "but one point in this case," *i. e.:* "What is the measure of just compensation * * * to these defendants" as tenants under their lease. He asserts that, since defendants had no interest in the land other than a one-year lease, they had no "interest in the real estate." To that claim we shall now direct our attention, since that is determinative of plaintiff's cause as chosen by him and maintained throughout the trial below and here.

 Section 117.01 (§ 6537) provides:

"When the taking of private property for any public use shall be authorized by law, it may be acquired under the right of eminent domain in the manner prescribed by this chapter; * * *."

In the next section, 117.02, subd. 2 (§ 6538), we find:

"The word 'taking' and all words and phrases of like import include every interference, under the right of eminent domain, with the ownership, possession, enjoyment, or value of private property."

Subd. 3 reads:

"The word 'owner' extends to all persons interested in such property as proprietors, tenants, encumbrancers, or otherwise."

We think that under these explicit terms of the statute it became the duty of the commissioners to make awards compensating *both*

owner and tenants for all property taken. The respective interests of the parties constituted property rights taken and appropriated by the state. In conformity with that duty, they made the award to both the fee owner and his tenants. It seems clear that in so doing they concluded that such rights and interests of the owner and his tenants should be left for future determination by the parties themselves or, if they could not agree, that such determination should be made by the court. In so disposing of that issue, they were but following our decision in Kafka v. Davidson, 135 Minn. 389, and 394, 160 N. W. 1021, and 1023, where we held that an award of damages in condemnation—

"may be made in gross and be apportioned thereafter between the various parties in interest according to their interests"; that all such "parties are bound and concluded by the award as fixed and determined" in such condemnation; that "Any party entitled to share in the award may bring an action for his share against any other party to whom such share has been paid"; and where a leasehold estate has been taken "it is well settled that the measure of damages is the fair market value of the estate so taken."

The clear purpose of the quoted statute was to give effect to the requirement of Minn. Const. art. 1, § 13, that "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." It is apparent from what has been said that in this case private property was taken for a public use and that just compensation has been provided and paid, all in conformity with statutory direction. As we have seen, proper division of the award between the owner of the fee and his tenants is the real issue. Plaintiff's position is "That said lease or leasehold interest of lessee therein has no value and that said defendants have no right, title, lien or interest in or to any part of said award." That contention in turn has for its basis the provision of § 507.01 (§ 8195) that a lease for a term of less than three years conveys no interest in the real estate itself. He thinks real estate only is involved in condemnation. In sup-

port are cited Chandler v. Kent, 8 Minn. 467 (524), and State, by Attorney General, v. Riley, 208 Minn. 6, 293 N. W. 95, and the later opinion in that case found in 213 Minn. 448, 7 N. W. (2d) 770.

Conceding for the purpose of argument that defendants' interest is not real estate, still the fact remains that under the lease and the provisions of our statute, defendants possessed granted rights from the fee owner. Their right to use and occupy the land and the buildings thereon was for a definite term. And the legislature has provided that all rights taken by condemnation must be paid for by the taker.

In 1 Tiffany, Real Property (3 ed.) § 72, under "Estates Less than Freehold," the author defines an estate for years as one "limited for a certain time, as for a year, * * * or any greater or less period of a fixed duration." In § 79, he points out the distinction between the rights of a lessee and those of a licensee. A tenant under a lease is one who has been given a possession of land which is "exclusive even of the landlord except as the lease permits his entry, and saving always the landlord's right to enter to demand rent or to make repairs." A licensee is one who has a "mere permission to use land, dominion over it remaining in the owner and no interest in or exclusive possession of it being given" to the occupant.

Chandler v. Kent, 8 Minn. 467 (524), *supra,* is of no aid to plaintiff. That action was one in forcible entry and unlawful detainer. Our holding was that a lease for a term not exceeding three years need not be attested by witnesses. What led to reversal by this court is found at 8 Minn. 467 at p. 471 (524 at p. 528) where we held:

"If the plaintiff had declared, according to the facts proved, that he had made a lease of *his interest* in the premises, without averring or proving what that interest was, the court would not have been able to award restitution to him, because, until the extent of this interest was ascertained, it could not be known what property was embraced in the lease."

The court concluded that the language of the lease "is too uncertain in its terms to entitle the lessor * * * to the remedy he seeks."

In the Riley case we said (208 Minn. 8, 293 N. W. 96) :

"From this record and the order below, the only inference possible as to McCarthy's rights is * * * that he occupied the property under *revocable license and with unconditional right to remove it [the building] if the license were revoked.* If that is the situation, it is impossible to see any basis for a claim by him to any part of the fund [awarded in condemnation]. His house was not taken. The condemnation revoked his license to occupy the ground. He removed his building, which was his only right. So he was not damaged, if, as determined below, he did not own the land." (Italics supplied.)

In other words, he was a licensee, not a tenant. A new trial was granted and had. On the second appeal, we disposed of the case by finding and holding (213 Minn. 452, 7 N. W. [2d] 772-773) :

"* * * When the inception of the possession is permissive and not hostile or under claim or color of right, it is presumed to so continue and does not ripen into title however long it may continue, unless circumstances or declarations indicate an intent hostile to the true owner."

The issue there involved and determined was whether the 15-year statute of limitations had run. We held, for the reasons stated above, that the statute never came into operation. Obviously, this case affords plaintiff no comfort.

■ In condemnation, the cases generally hold that, even though a lease conveys no actual interest in the land itself and in that sense is not real estate, yet it does create a right in the lessee to use and occupy the land which, under our constitution and the cited statute, falls within the definition of property. Annotation of cases on this phase is found in 98 A. L. R. 259. Of the cases there cited, the following are deemed helpful. In F. W. Woolworth

Co. v. Berlin, 82 N. H. 153, 154, 130 A. 741, the holding was that a "leasehold estate was property and was protected" by the "constitutional guaranty" of just compensation, and that "If the whole or any part" of the lessee's "right has been taken for public use," he "is entitled to compensation therefor." To the same effect are Dallas County v. Hart Bros. (Tex. Civ. App.) 271 S. W. 408, and Hart Bros. v. Dallas County (Tex. Com. App.) 279 S. W. 1111; Baker v. State, 63 Misc. 549, 118 N. Y. S. 618; City of Detroit v. C. H. Little Co. 141 Mich. 637, 104 N. W. 1108 (see same case in 146 Mich. 373, 109 N. W. 671); State ex rel. Miles City v. N. P. Ry. Co. 88 Mont. 529, 295 P. 257.

In the recent case of United States v. General Motors Corp. 323 U. S. 373, 374, 65 S. Ct. 357, 358, 89 L. ed. —, the problem involved was "the ascertainment of the just compensation required by the Fifth Amendment of the Constitution, where, in the exercise of the power of eminent domain, temporary occupancy of a portion of a leased building is taken from a tenant who holds under a long term lease." The concluding paragraph of that opinion is highly important in situations such as we have in this case. Said the court (323 U. S. 383, 65 S. Ct. 362, 89 L. ed. —):

"For fixtures and permanent equipment destroyed or depreciated in value by the taking, the respondent is entitled to compensation. An owner's rights in these are no less property within the meaning of the Fifth Amendment than his rights in land and the structures thereon erected. And it matters not whether they were taken over by the Government or destroyed, since, as has been said, destruction is tantamount to taking. This is true whether the fixtures and equipment would be considered such as between vendor and vendee, or as a tenant's trade fixtures. In respect to them, the tenant whose occupancy is taken is entitled to compensation for destruction, damage or depreciation in value. And since they are property distinct from the right of occupancy such compensation should be awarded not as part of but in addition to the value of the occupancy as such."

We find nothing in Kafka v. Davidson, 135 Minn. 389, 160 N. W. 1021, *supra*, or In re Improvement of Third Street, 178 Minn. 552, 228 N. W. 162, to aid plaintiff's theory.

■ Viewing the entire record, we find no difficulty in holding that the amount allowed defendants by the trial court is well sustained by the evidence.

■ Plaintiff also seeks to eliminate defendants from participating in the award because in the lease (by him prepared) appears this sentence: "The said lessor is not responsible for any *loss of business caused by unavoidable procedure*." (Italics supplied.) Testifying at the trial, he said, as stated in his brief, "that he told the defendant Edward Krier that with a war on you couldn't tell what would happen; that it might put the defendants out of business and that he, the plaintiff, didn't want to be responsible for any business loss sustained by the defendants." Mr. Krier's version of what plaintiff said is that there were chances of loss of business by reason of the war and the proximity of his place of business to the New Brighton war plant. Neither defendant was informed, nor did either of them then know, of the imminence of any highway condemnation proceeding. Their conduct in buying Miller's business, fixtures, and goodwill and paying him $2,000 therefor is rather a persuasive circumstance that condemnation was not in contemplation of the parties; hence the quoted clause could not have referred to that event. Moreover, "loss of business" to most minds would not mean its total destruction. The tavern was built by plaintiff in 1934 and had ever since been operated by his tenants in that kind of business until appropriated by the state. The court found that the business as "conducted by defendants in said leased premises was substantial and lucrative." The lease is plaintiff's own handiwork. Had he chosen to cast upon defendants the whole burden of loss in the event of condemnation of the demised premises, he could and should have said so in that instrument. That is what governed in the case of In re Improvement of Third Street, 178 Minn. 552, 228 N. W. 162, *supra*. The syllabus paragraph prepared by Mr. Justice Holt tells the story. At most, a fact question

was presented, and the trier thereof found for defendants. So that disposes of the issue.

■ We are asked to consider 45 alleged assignments of error. As to at least 35 of these, discussion is wholly futile. These are found at pp. 30 to 32 of plaintiff's brief. At p. 30 alone, he assumes to treat 27 of them. He refers to eight of them in this fashion: "defendants here made many claims which were not valid." In the next 19 he is content with these remarks: "Defendants also offered considerable evidence" and "much testimony," and refers to his assignments of error by numbering them only. There is neither argument nor citation of authorities to show any basis upon which error may be predicated. We have mere assertions instead of helpful argument with appropriate citations. Counsel should know that helpful assistance on their part is required under our rules. Our work is arduous enough even with adequate briefs. We are dealing here with conflicting interests requiring finality in decision. That is why we require briefs, not mere blanket assertions.

Judgment affirmed.