248 So.2d 504 (1971)
Bernice LUNNEY and James Lunney, Appellants,
v.
Marjorie Merriweather POST, Appellee.
No. 69-807.
District Court of Appeal of Florida, Fourth District.
April 19, 1971.
Question Certified May 18, 1971.
*505 John A. Gentry, III, of Moyle, Gentry & Jones, West Palm Beach, for appellants.
John A. Beranek, of Jones, Paine & Foster, West Palm Beach, for appellee.
WALDEN, Judge.
Plaintiff-appellant, Bernice Lunney, in her amended complaint alleged she was injured in defendant's home while taking a Garden Club sponsored tour of defendant's property. The trial judge instructed the jury that plaintiff was a licensee and the jury found for defendant on that basis. We believe that instruction to be in error and therefore reverse.
Defendant, an honorary Garden Club member, graciously allowed her estate to be included in a Garden Club tour of showplace homes. Defendant received no tangible benefit. The Garden Club charged $5.00 for the tour which plaintiff paid.
Plaintiff arrived at defendant's home on a rainy afternoon. One of the rooms open to the public was the library. It was a dim day and the room was dimly lighted. None of defendant's numerous servants were present in the library. Defendant had installed a vinyl material over her valuable Oriental rugs. This vinyl was, according to testimony, unsuitable for the use assigned it. It bubbled and wrinkled when put into extensive use, as it was that day.
Mrs. Lunney walked into the library, left and returned with her friends. She tripped on the plastic and fractured her hip.
At the trial recovery hinged on the amount of care defendant would be expected to take in the given situation. If plaintiff was declared a licensee, defendant only had a duty to refrain from wanton negligence or willful misconduct. If plaintiff was a business invitee, defendant had a duty to keep the premises in a reasonably safe condition. See McNulty v. Hurley, Fla. 1957, 97 So.2d 185.
The jury, over objection, was instructed that plaintiff was a licensee. Plaintiff's counsel's request for instructions that plaintiff was a business invitee or alternatively that it was a decision for the jury, was denied. The jury found that defendant had not breached her duty to a licensee.
We will not deny that pre-1970 Florida law contains numerous decisions in the area of business invitees and licensees. We feel that in a case such as this a rigid adherence to those decisions would be unjust to plaintiff.
There are three theories concerning invitees in this country today. There are also definite trends.
1. The original Restatement of Torts divided visitors on land into three categories, trespassers, licensees and business invitees. A trespasser came without permission and was owed little duty of care. The licensee came with permission as a social guest. He must be protected against willful and wanton negligence. The business invitee came with an express or implied invitation and for the mutual economic or business benefit of the property owner. It was expected the premises would be made reasonably safe for him. Those states following this classification, including Florida until recently, have called the test for business invitees the mutual benefit test. McNulty, supra; City of Boca Raton v. Mattef, Fla. 1956, 91 So.2d 644.
*506 Using this test customers in stores, hotel guests, even people visiting friends at hotels and hospitals have been held business invitees. But using the same test plaintiff would be a licensee. There was no mutual economic benefit, defendant received nothing, even though the Garden Club did.
It has been often stated that this test is too narrow. Our case bears this out. Clearly plaintiff was invited as a member of the public not as a social guest, and clearly she paid for this invitation. If this case involved a theater, a ball park with an admission fee, plaintiff would be a business invitee. Yet because of the set-up of the tour, and the peculiar relationship of the parties, facts beyond plaintiff's control and knowledge, she can not recover. In fact, plaintiff, not knowing where her money went, had every right to assume she was an invitee of Mrs. Post. She was positive she was not a social guest.
The restrictive nature of the mutual benefit theory leads the courts to graft exceptions. "It may be argued that the courts which have adopted the economic benefit test in striving for what seemed to be a desirable result * * * have so attenuated the concept * * * as to leave it little real content. The test must under many circumstances turn upon a determination of the visitor's subjective state of mind." 95 A.L.R.2d 993, Annotation: Invitee Status  Test.
2. The second test for invitees comes from the 2nd Restatement of Torts, § 332, which states:
"(1) An invitee is either a public invitee or a business visitor.
"(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
"(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."
Under this theory plaintiff would be an invitee. While she had no business with defendant, she was invited to enter or remain on land as a member of the public for a purpose for which the land was held open to the public.
This test is broader than the mere economic benefit test but does not dispute that, if an economic benefit is present, the person is prima facie an invitee.
Courts are receiving the new test with wide acceptance. Prosser in his Law of Torts 3rd Edition, states that "the second theory is now accepted by the great majority of the courts; and many visitors from whose presence no shadow of pecuniary benefit is to be found are held to be invitees. Prosser continues that when premises are thrown open to the public assurances of reasonable care are ordinarily given. This test has been called the invitation test. It can be said to be a setting out in words what many courts have already been doing through a distortion of the economic benefit test.
Numerous jurisdictions have adopted the invitation test, often in combination with the benefit test. See 95 A.L.R.2d Annotation, supra, at p. 1000 and p. 1006. Also see City of Richmond v. Grizzard, 1964, 205 Va. 298, 136 S.E.2d 827; Dowd v. Portsmouth Hospital, 1963, 105 N.H. 53, 193 A.2d 788, and Lemon v. Busey, 1969, 204 Kan. 119, 461 P.2d 145. The Dowd case puts it especially succinctly, saying that the expansion of the invitee status was justified by the principles of reasonableness and justice.
Florida, too, has recognized the value of the invitation test. In Smith v. Montgomery Ward & Co., Fla.App. 1970, 232 So.2d 195, this court said,
"Although superficially the more restricted economic benefit test seems plausible and satisfactory, it is ill-founded for several reasons. For one thing, making the purpose of the visit determinative of the plaintiff's status enables him to clothe himself with an invitee's *507 garments merely by proper allegations in his pleadings. * * *
"There are too many instances where the economic benefit theory has been strained to the breaking point. Yet the courts have determined to be invitees a friend or child accompanying a customer into his store, * * * or a person who goes with another to a railroad station to see him off, * * *. Or the person who goes to a bank to change a five-dollar bill. * * * If benefit is conferred upon the occupier by such visits as these, it is certainly on bases more tenuous than those which often may be found in the case of a social guest whose status has always been considered that of a licensee. * * *
"For the obvious reasons alluded to above, we are disposed not to accept the economic benefit theory as the sole test in Florida, since the invitation theory serves well the broad principles of negligence." (Citations omitted.)
It thus appears a large crack has appeared in the veneer of previous Florida law on invitees. We agree heartily with this new concept.
3. While the trend is toward adoption of the invitation test there is a sub-trend away from all tests. This non-test would substitute for the various technical rules the broad test of reasonable care under the circumstances. The status of the injured person would have some bearing, in the light of the facts giving rise to such status, but it would not be determinative. 33 A.L.R.3d 508, Annotation: Premises Liability, Claimants Status.
The leading case adopting this view is Rowland v. Christian, 1968, 69 Cal.2d 108, 70 Cal. Rptr. 97, 443 P.2d 561. The court concluded that the proper test to be applied to the liability of the possessor of land is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others. The court also said that
"A man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose. Reasonable people do not ordinarily vary their conduct depending upon such matters, and to focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and humanitarian values. * * *"
See 32 A.L.R.3d, supra, at p. 523.
While this court finds much merit in such a position, we can foresee difficulties in such a case by case approach. This non-test has been explored mainly to bring to light the liberal atmosphere which is fast covering this whole area of the law.
So what is this court to do? Given the law as it stood in Florida before Smith v. Montgomery Ward & Co., supra, we can, as has been done so many times previously, create a fiction or a distortion within the framework of the mutual benefit test. Mrs. Lunney received benefit. The Garden Club received the fee. It could be fairly said that Mrs. Post donated, as was her charitable and benevolent custom, her share of the entrance fee to the Garden Club. Mrs. Post was an honorary club member and as such was interested in its well being and smooth functioning. She was an indirect beneficiary of the club's financial stability. Therefore, there was mutual economic benefit and plaintiff was a business invitee.
This court faces the issue squarely and adopts what we conceive to be the better and majority law as expressed by the Restatement of Torts, Second, and the opinion in Smith v. Montgomery Ward & Co., supra. We feel quite strongly that plaintiff was an invitee and find no reason, aside from the unusual facts in this isolated case, why she should be deprived of an opportunity for recovery because defendant's *508 negligence fits through a loophole of Florida law.
Before pursuing the invitee theories to their conclusion for this case, we discuss another facet, Mrs. Post's relationship with the Garden Club. She was not a lessor because there was no interest in land transferred. She was a licensor, having given the Garden Club permission to use her home for a limited time and purpose. Seabloom v. Krier, 1945, 219 Minn. 362, 18 N.W.2d 88.
Lessors normally do not have liability for injuries occurring on the property of the lessee. There are exceptions, however, such as common passages and grounds kept up by the lessor, dangerous pre-existing conditions known to the lessor and special duties put on the lessor by contract, lease or other agreement. See 25 A.L.R.2d 444, Annotation: Landlord's Liability.
In the case at hand we can only analogize the liability of a lessor to the liability of the licensor. Mrs. Post would normally be at least partially relieved of liability. However, in this case she refused all offers of assistance from the Garden Club. She hired extra servants rather than using the club personnel. She did not use the regular carpet covering the club suggested, but rather procured her own. She handled the lighting in the library.
Under such circumstances her active participation and her control of the whole operation would make her an invitor and responsible for acts and omissions of negligence occurring upon her premises. This would definitely be the case for lessors and we find no reason why it should not be extended to licensors.
Upon reflection and for the reasons stated, we believe that the requirements of law and justice would be best served by a reversal and remand with instructions to submit the issues of negligence and contributory negligence to the jury again, along with an instruction that Mrs. Lunney was an invitee.
In conclusion, this court is basing its reversal on the following points:
1. The adoption of the invitation theory as expressed in the Second Restatement of Torts is more reasonable, realistic and as this case so ably demonstrates, more just. Plaintiff was without question an invitee. She should have an opportunity to recover as such.
2. If the invitation test be unacceptable then we hold plaintiff to be a business invitee as a matter of law. There was mutual economic benefit between Mrs. Post and Mrs. Lunney. Therefore, the benefit test is satisfied.
We believe this decision passes on a question which could be well considered by the Supreme Court under Rule 4.5(c) (6), 32 F.S.A. Thus, we suggest that this court will, on timely application, certify this decision as passing on a question of great public interest.
For the foregoing reasons the judgment is reversed and the cause remanded for a new trial consistent with the views herein expressed.
Reversed and remanded.
McCAIN, DAVID L., Associate Judge, concurs.
REED, J., dissents, with opinion.
REED, Judge (dissenting).
There are two Florida Supreme Court opinions dealing with the definition of an invitee and neither has been overruled or receded from. The first is City of Boca Raton v. Mattef, Fla. 1956, 91 So.2d 644, 647, in which an invitee is defined as one who enters the defendant's premises for some purpose connected with the owner or occupier's business. The second case is McNulty v. Hurley, Fla. 1957, 97 So.2d 185. In that case the plaintiff sued Bishop Hurley who as a corporation sole owned all *509 the property of the Roman Catholic Diocese of St. Augustine. This included the church premises in which the plaintiff was accidentally injured. The question squarely presented to the Florida Supreme Court was whether the plaintiff who as a member of the public attending worship services at the church was an invitee or a licensee as to the property owner. The court held that the plaintiff was a licensee and affirmed a dismissal of her complaint. The court relied on the definition of an invitee given in City of Boca Raton v. Mattef, supra, and also adopted with approval the following from a 1938 opinion rendered by the Commission of Appeals of Texas:
"`In determining this question the general test is whether the injured person, at the time of the injury, had present business relations with the owner of the premises which would render his presence of mutual aid to both, or whether his presence on the premises was for his own convenience, or on business with others than the owner of the premises. In the absence of some relation which inures to the mutual benefit of the two, or to that of the owner, no invitation can be implied, and the injured person must be regarded as a mere licensee.'" (Cowart v. Meeks, 1938, 131 Tex. 36, 111 S.W.2d 1105, 1107.)
Thus, Florida has adopted the economic or mutual benefit theory with respect to the classification of a person on another's land as an invitee or a licensee.
Another theory has been adopted by several jurisdictions as well as the Restatement of Torts, Second, § 332, that would confer invitee status not only on a person who enters premises for business purposes, but also on one who as a member of the public enters pursuant to an invitation to the public, as where premises are held open to the public. See for example City of Richmond v. Grizzard, 1964, 205 Va. 298, 136 S.E.2d 827. There a child injured in a church building owned by the city, but leased to a church, was held to be an invitee. The Virginia court stated that one is an invitee where (1) there is an express invitation to come on defendant's land or (2) the premises are open to the public and the injured person enters and remains on the land pursuant to the purposes for which the premises are held open to the public. See also Dowd v. Portsmouth Hospital, 1963, 105 N.H. 53, 193 A.2d 788. In the Dowd case the Supreme Court of New Hampshire adopted the invitation theory of the Restatement in addition to the economic benefit test which had theretofore been followed in that state. The opinion indicated that the expansion of the invitee status was justified by principles of reasonableness and justice.
Under the rule of McNulty v. Hurley, supra, it is plain that the plaintiff was a licensee. In McNulty v. Hurley the court said:
"`* * * In the absence of some relation which inures to the mutual benefit of the two, or to that of the owner, no invitation can be implied, and the injured person must be regarded as a mere licensee.'"

The facts in our case rather clearly show that the presence of the plaintiff on Mrs. Post's property in no wise benefitted Mrs. Post. A finding of an economic benefit to Mrs. Post from the plaintiff's presence at Mrs. Post's home would involve a fiction so wild as to be completely unacceptable  at least to this writer.
Under the invitation theory adopted by several of the above cited cases, Mrs. Lunney would just as clearly be an invitee. It is apparent, however, that the invitation theory runs contrary to McNulty v. Hurley, supra. If the invitation test is the law, of course, McNulty v. Hurley should have reached a different result because the plaintiff in that case was on property held open to the public and was there for the purpose for which it was open to the public. If, therefore, we adopt the invitation theory we will place *510 ourselves in a position of conflict with McNulty v. Hurley.
It is my view that the jurisprudence of our state will be better served if the district courts of appeal do not attempt to overrule prior decisions of the Florida Supreme Court in a headlong rush to extend financial liability to every injured person who presents an appealing claim. In a difficult case where controlling precedent seems to be outmoded, the better approach for us to take is to apply the controlling precedent established by the Florida Supreme Court and then offer to certify the decision. In this way the law as applied by the district courts of appeal will admit of some degree of predictability, while uniformity and soundness of principle may be achieved through a liberal use of the certification procedure. Accordingly, I would affirm the final judgment and, on proper application, certify the decision as passing on a question of great public interest, that question being:
"Where a person opens his premises to the public by expressly or impliedly inviting the public to enter, does a member of the public who enters in that capacity pursuant to the purposes for which the premises were opened to the public and remains on the premises in a manner consistent with such purposes occupy the status of an invitee on those premises?"
For the foregoing reason, I respectfully dissent.

Question Certified
Ordered that the opinion of this court filed April 19, 1971, is hereby certified to be one which passes upon a question of great public interest. F.A.R.4.5(c) (6), 32 F.S.A.; further,
Ordered that the question certified is as follows:
"Under the facts and circumstances revealed in this opinion, did the plaintiff, Mrs. Lunney, occupy the status of an invitee under either (1) the invitation test stated in Second Restatement of Torts, § 332, and the case of Smith v. Montgomery Ward & Co., Fla.App. 1970, 232 So.2d 195, or (2) under the economic benefit test promulgated in McNulty v. Hurley, Fla. 1957, 97 So.2d 185?"