# DASHIELDS *v.* W. B. MOSES & SONS.*

NEGLIGENCE; UNSAFE PREMISES; QUESTIONS FOR JURY; CONTRIBUTORY
NEGLIGENCE.

1. Where an insurance company has the right under its policy to inspect
   the premises of the insured and one of its inspectors, under the
   guidance of an employee of the insured, is engaged in inspecting
   them, he is on them by invitation, and not as a mere licensee;
   and the insured is liable to him in damages, if he is using due care,
   for injuries occasioned by the unsafe condition of the premises, un-
   known to him, but known to the insured.
2. Where there is an issue of fact upon which reasonable minds might
   disagree, the trial court is not justified in withdrawing the case
   from the consideration of the jury.
3. Where an insurance inspector, while inspecting the insured's premises
   under the guidance of an employee of the insured, fell into a pit
   in the boiler room, not having been told by his guide that it was
   necessary to cross it by means of a plank, and it was his first visit
   to the building, and he testified it was so dark in the boiler room
   that he could not see where he was going, the question of his con-
   tributory negligence is for the jury.

No. 2144.   Submitted October 17, 1910.   Decided November 1, 1910.

HEARING on an appeal by the plaintiff from a judgment of
the Supreme Court of the District of Columbia, upon a verdict
directed by the court, in an action to recover damages for per-
sonal injuries.                                    *Reversed.*

*\*Negligence—Unsafe Premises.*—As to duty of owner of premises to
protect licensee against hidden damages, see note to *Watson* v. *Manitou
& P. P. R. Co.* 17 L.R.A.(N.S.) 916. As to liability of occupant of prem-
ises to servants entering them by invitation or as mere licensees, see note
to *Cleveland, C. C. & St. L. R. Co.* v. *Berry,* 46 L.R.A. 58.

The COURT in the opinion stated the facts as follows:

This is an action on the case, brought in the supreme court of the District of Columbia by the appellant, William H. Dashields, to recover damages for personal injuries received by him through the alleged negligence of the appellee corporation, W. B. Moses & Sons.

It appears that, prior to the date of the alleged accident, the appellee company took out a policy of insurance with the Maryland Casualty Company, of Baltimore, Maryland, whereby the company, in consideration of a stated premium, issued to the appellee a sprinkler leakage policy indemnifying the appellee company against loss by accidental discharge or leakage of water from the automatic sprinkler system installed in the building in which the business of the appellee company is conducted in the city of Washington. The policy contained the following condition: "The company or its representatives shall have at all reasonable times the right of access to and inspection of the premises or property covered by or relating to this insurance, and by so inspecting assumes no liability beyond that expressed herein. The company or any of its inspectors may suspend this policy until defects or dangers are removed to the satisfaction of the company."

The appellant was in the employ of the Maryland Casualty Company as an inspector, and had been sent to inspect the sprinkler system in the building of the appellee corporation. The inspector presented himself at appellee's place of business, and stated to the manager his desire to go through the building to inspect the sprinkler system. The manager requested him to wait until the engineer should arrive. After waiting for some time, the engineer arrived, and the manager instructed him to show the appellant through the building.

From appellant's testimony, it appears that the engineer took him in charge, and, after showing him through the sub-basement, took him into the basement proper, where he asked the appellant if he desired to inspect the pump, to which appellant replied that he did. Whereupon the engineer requested

appellant to follow him. He led the way into a dark room, which the appellant afterwards learned was the boiler room. It was in this room that the accident occurred. The further evidence of appellant is to the effect that he had never been in appellee's place of business before, and that in the boiler room there was a pit some 3 feet deep and 10 feet across, over which was extended an oak plank 10 inches wide, $2\frac{1}{2}$ inches thick, and 12 feet long. The engineer, in leading the way into the boiler room, went across this plank without calling appellant's attention to the fact that there was any pit in the room, or that he was expected to walk across the pit upon a suspended plank. The appellant testified that the room was perfectly dark; that the first knowledge he had of the existence of the pit was when he fell into it, and that he was not given any warning by the engineer.

It appears from the evidence of other witnesses introduced on behalf of appellant, that in the pavement on the east side of appellee's building was a metal trapdoor about 3 feet square, that was to the east of this boiler pit, and a little to the north of the entrance to the boiler room. The plank, running east and west, extended from this entrance across the pit. The trapdoor was open at the time of the accident. One witness, testifying as to the condition at the entrance to the boiler room, said: "It was not real light in there, but I could see where I was going, and I could see the end of the plank, but after taking, I would say, after the first step on the plank, the corner of the wall intervening between me and this opening in the pavement, the rest of the distance on this plank was dark, until I had gotten across the plank beyond this smoke duct, I would call it, which I had to stoop and get around. Then I could see on the opposite end of the plank the light which came from the windows on that side; but I would judge that about two thirds of the distance along this plank was very dark. I could not see where I was walking, but had to do it by feeling my way." It appears that the light from the opening in the pavement was the only means of lighting the east entrance to the boiler room, through which appellant entered

at the time he was injured. There were small windows in the west side of the boiler room, but the light through these windows was cut off by the smoke duct and furnished no light to one crossing the plank until he had proceeded almost to the west end.

This, in substance, was the evidence of the plaintiff showing the conditions at the place where the injury occurred. When the appellant, plaintiff below, rested his case, counsel for appellee moved the court to instruct the jury to return a verdict for the appellee. This motion was granted, and from the judgment rendered thereon the case comes here on appeal.

*Mr. Leonard J. Mather* and *Mr. Walter L. Clark* for the appellant.

*Mr. R. Golden Donaldson* and *Mr. Abner H. Ferguson* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Two questions are presented in the brief of counsel for the appellant: "First: Was appellant on appellee's premises by way of invitation? Second: If not, could he be actively led into a hidden danger, without warning, and thereby be entrapped to his hurt, without fault on his part?" If the first question can be answered in the affirmative, it will be unnecessary to consider the second.

It will be observed that, by the terms of the insurance policy, the insurance company reserved, as a condition precedent to the issuance of the policy and its liability thereunder, the right, through its agents, to inspect the sprinkler system at all reasonable times. Appellant was the duly authorized agent of the insurance company, sent to appellee's place of business for this purpose. No objection was interposed by appellee to the inspection being made. An employee of the appellee company was designated to guide appellant through

the building. This constituted an invitation to the appellant to make the inspection. Appellant was not, therefore, in the eyes of the law, a mere licensee.

In the case of *Bennett* v. *Louisville & N. R. Co.* 102 U. S. 577, 26 L. ed. 235, Mr. Justice Harlan, distinguishing between a mere licensee and a person on the premises of another by invitation, said: "The facts disclosed by the pleadings, and by the demurrer conceded to exist, seem to bring this case within the rule, founded in justice and necessity and illustrated in many adjudged cases in the American courts, that the owner or occupant of land who, by invitation, express or implied, induces or leads others to come upon his premises, for any lawful purpose, is liable in damages to such persons, they using due care, for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him, and not to them, and was negligently suffered to exist, without timely notice to the public or to those who were likely to act upon such invitation. *New Orleans, M. & C. R. Co.* v. *Hanning,* 15 Wall. 649, 21 L. ed. 220; *Carleton* v. *Franconia Iron & Steel Co.* 99 Mass. 216; *Sweeny* v. *Old Colony & N. R. Co.* 10 Allen, 368; Wharton, Neg. §§ 349–352; Cooley, Torts, 604–607, and authorities cited by those authors." In the same case the learned justice further said: "It is sometimes difficult to determine whether the circumstances make a case of invitation, in the technical sense of that word, as used in a large number of adjudged cases, or only a case of mere license. 'The principle,' says Mr. Campbell, in his treatise on Negligence, 'appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it.' "

It is difficult to understand on what ground appellee can claim that the inspection of this plant was not for its benefit. It was not only a condition of the insurance policy, which gave the insurance company the right to send appellant to make the inspection, but it was for the benefit of appellee that such inspection should be made, so that damage by leakage

might by such inspection be averted. That appellant had a right to be ·in appellee's building when the accident occurred is conceded, and that he was there, not as a mere licensee, but by invitation, the law will imply from the relations of the parties and the mutual benefit to be derived from the inspection.

It is contended by counsel for appellee that under the evidence, appellant was guilty of such gross contributory negligence as would forbid recovery by him in any view of the case. Contributory negligence is usually a question of fact for the considreation of the jury. Where there is an issue of fact upon which reasonable minds might disagree, the court is not justified in withdrawing the case from the consideration of the jury. We think the evidence clearly presents a question upon which reasonable minds might differ as to whether or not the conditions in the boiler pit were such as to apprise the appellant, in the exercise of reasonable prudence and care, not only of the existence of the pit, but that to cross it he was required to walk upon a plank. His testimony is to the effect that this was the first time he had ever been in the building; that the first knowledge he had, either of the existence of the plank or of the pit, was when he fell into the latter; and that it was so dark in the boiler room he could not see where he was going. He was following the guidance of the engineer, who invited him to come that way. Under this state of facts, the question of negligence was clearly one for the jury, and it was error to give the instruction complained of.

The judgment is reversed, with costs, and a new trial granted. *Reversed.*