Jane G. WEST and Ralph E. West, Appellants,

v.

Ruth Shizuko TAN, individually and doing business as Banyan Inn, Appellee.

No. 18240.

United States Court of Appeals Ninth Circuit.

Sept. 23, 1963.

Rehearing Denied Oct. 21, 1963.

Sullivan, Roche, Johnson & Farraher, San Francisco, Cal., and Axel Ornelles, Honolulu, Hawaii, for appellants.

Robertson, Castle & Anthony, J. Garner Anthony, Thomas M. Waddoups, and Alexander C. Marrack, Honolulu, Hawaii, for appellee.

Before HAMLEY, HAMLIN and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

This is a diversity case to which the laws of Hawaii are applicable. The appellants, plaintiffs in the trial court, obtained a verdict for the appellant wife for damages resulting from an accident in which she was injured, and a verdict for the appellant husband for certain expenses incurred by him. The verdict for the husband depends upon the correctness of the decision for the wife. The trial judge granted a judgment notwithstanding the verdict, and the only question before us is whether this was error.

The facts that are material to the appeal are basically undisputed. We state them most favorably to appellant, but omit matters not directly pertinent to the issue to be decided. The appellants were vacationing in Hawaii, and on the night in question, accompanied by friends, they visited a restaurant known as the Banyan Inn, situated in the town of Lahaina on the Island of Maui, and owned and operated by appellee. The dining room area is covered, and is adjacent to an uncovered dance floor. The appellants were seated with friends at a table near the edge of the dance floor. Across this dance floor and about 30 feet away was a bandstand, enclosed on the back and sides by walls and covered by a ceiling. The floor or platform of the stand was about 12 inches above the dance floor. Both the dance floor and the floor of the bandstand were made of concrete of the same color, described as "dark." The face of the step from the dance floor to the bandstand was of a lighter color, plainly visible to anyone approaching the bandstand, although the immediate area in which the stand was located was not lighted. The dining area was lighted, but not brightly. The bandstand was dark, but there was light enough coming from the dining area to see an upright piano, situated toward the rear of the stand. The front of the stand was partially fenced off by some sort of lattice, but with space in the center through which access to the stand could be obtained from the dance floor. The physical layout, as shown by the description of the premises given by the witnesses, and by the photographs in evidence, would make it apparent to anyone in the dining area that the bandstand was not intended for the regular use of patrons of the restaurant.

The appellant wife loved to play the piano and had been told at her hotel that there was a piano at the Banyan Inn. She brought along some sheet music and after the party was seated she asked a friend to inquire of the waitress if it would be all right if she went up and played the piano, and she herself also inquired. The reply was: "Certainly, that would be wonderful," or words to that effect. The two appellants then pro-

ceeded to the bandstand. The wife testified that as she approached it she could see the step, that it was very clear to her, and that she stepped up without difficulty, but that "it was really dark there where the piano was." The appellant husband obtained a folding chair from a stack of chairs that was on the bandstand and the wife then sat on the chair at the piano. There was light enough that she could see the piano and place her sheet music on it, see the chairs, and see to sit down, but not enough to permit her to read her music. Her husband searched for a light which he could use to illuminate her sheet music, and in the meantime she played for a few minutes from memory. Her husband found a small lamp giving very little illumination, which he used to light her sheet music. Her playing lasted about ten minutes. During this time, appellee and her husband heard the music and appellee saw her on the stand at the piano. Neither of them did anything to stop her.

When appellants were told that dinner was being served, the wife got up to leave the bandstand. Her testimony is that she knew that the step was there, that she knew about how many steps it would take to go from the piano to the step, that she looked to see if she could find the edge of the step, that because it was dark she could not see it, particularly since the floor color was the same, so that in the dim illumination "it looked like one floor, just had the appearance of one floor running, melding into each other. I finally found the edge of the step and put my left foot down, and as the foot was going down, it wasn't reaching the bottom, and I sort of—when I wasn't reaching the bottom, it gave me a little— set me off balance and I turned over on my ankle and then threw out my elbow to save my fall." Her testimony is confused and contradictory as to what she meant when she said that she found the edge of the step. It is not clear whether she found it with her foot *before* stepping down or found it *by* stepping down. She could not see how high the step was, but she remembered that it was a high

step. She did not ask anyone for a light or ask anyone to assist her. She suffered fairly serious injuries.

Two of the grounds upon which the court granted the motion for judgment notwithstanding the verdict were that the appellant wife was a mere licensee as to the band platform, and that she assumed whatever risk there was, if any. We agree with the trial court. In most cases, questions as to whether a person is a "mere" licensee, or an invitee or business guest, and as to whether the risk was assumed, are fact questions, to be decided by the jury under proper instructions. But, as in other cases, there are times when the evidence is so clear that the court must rule as a matter of law; this is such a case.

We are cited to no statutes or decisions of the Supreme Court of Hawaii that are in point. We assume that that court, if confronted with the question, would apply principles of general law as to the liability of the appellee in these circumstances. We are of the opinion that on these undisputed facts the appellant wife was at the most a "gratuitous licensee" as defined in Restatement of Torts, § 331, or a "licensee," or "mere" or "bare" or "naked" licensee, as defined by Professor Prosser (Prosser, Torts, 2d ed., 1955, ch. 15, § 77, p. 445). As Professor Prosser says, "such a person is not a trespasser, since he is permitted to enter, but he comes for his own purposes rather than for any purpose or interest of the landholder. He has only the consent to distinguish him from a trespasser, and for this reason he is sometimes unflatteringly referred to as a 'bare' or a 'naked' licensee. He receives the use of the premises as a gift, and comes under the old saying that you may not look a gift horse in the mouth. He has no right to demand that the land be made safe for his reception, and he must, in general, assume the risk of the condition he may encounter, and look out for himself. The permission to enter carries with it no obligation to inspect the premises to discover dangers which are unknown to the

possessor, nor, a fortiori, to give warning or protection against conditions which are known or should be obvious to the licensee."

Of course, when appellants entered the defendant's restaurant, and while they were in the area designed and made available for the use of patrons, they were not then gratuitous licensees. They were what is commonly known as invitees, or business invitees or business visitors. (See Restatement, Torts, § 332) However, as Prosser points out (op. cit., § 78, p. 458), "the special obligation toward invitees exists only while the visitor is on the part of the premises which the occupier has thrown open to him for the purpose which makes him an invitee." (See also, Restatement, Torts, § 343, comment b.) We think this is an apt description of the situation here. There is nothing to indicate that the bandstand was thrown open to the appellants for the purpose which made them invitees while they were in the principal part of the restaurant. The fact that the waitress gave them permission does not make them invitees in the legal sense. It only means that when they went upon the platform, a part of the restaurant not provided for the use of patrons, they were gratuitous licensees, rather than trespassers. The record makes it clear that they were aware of this situation; otherwise why did they ask for permission? Thus, in Prosser's words, they had no right to demand that appellee make the bandstand safe for their reception, but were required to assume the risk of the conditions that they encountered and look out for themselves. (See also Restatement, Torts, § 342 and comments b. and e.)

The court was also right in holding, as a matter of law, that the appellant wife assumed the risk. Under no reasonable theory can it be said that the condition which brought about the unfortunate injury was a hidden or concealed danger or "trap." She knew that the step was there, and that it was high; she knew that it was dark; she knew how far it was from the piano; before she tried to go down the step she knew that she could not see where it was; she did not ask for light, or for assistance. She thought she knew where the step was, and proceeded to try to step down, knowing that she could not see it. At the most, she endeavored to protect herself by searching for the edge with her foot. Thus she was fully aware of the risk that she assumed. And she did not do anything to avoid that risk, or minimize it, as she could easily have done. On the contrary, being fully aware of the danger, but apparently confident of her ability to avoid it, she went ahead, relying entirely upon herself.

It is the general rule that neither a gratuitous licensee nor a business visitor or invitee can recover if he knows the condition and realizes the risk involved. (Restatement, Torts, § 340; Prosser, op. cit. § 78, p. 459, § 77, p. 445–46) We see no particular benefit to be gained from a discussion as to whether "assumption of risk" is the best phrase to describe this rule. Regardless of what may be the correct label, it is still clear that even if the first of the trial court's grounds for granting judgment n. o. v. were erroneous, the second would still require the same result.

Nor do we think it worthwhile to discuss the many cases from various jurisdictions, other than Hawaii, that are cited and discussed by the parties. We have no basis for picking any one of them as the case most likely to be followed by the courts of Hawaii. The principles discussed in the Restatement and by Prosser are followed by most courts, and we have no reason to doubt that they would also be followed by those of Hawaii.

Affirmed.