401 F.2d 430
 130 U.S.App.D.C. 365
 DISTRICT OF COLUMBIA, Appellant,
v.
Shirley A. THOMAS as the Administratrix of the Estate of
Donald B. Thomas, Appellee.
DISTRICT OF COLUMBIA, Appellant,
v.
John F. WYNN, Jr., Appellee.
Shirley A. THOMAS as the Administratrix of the Estate of
Donald B. Thomas, Appellant,
v.
DISTRICT OF COLUMBIA, Appellee.
 Nos. 21091, 21092, 21126.
 United States Court of Appeals District of Columbia Circuit.
 Argued Dec. 13, 1967.
Decided Aug. 23, 1968, Petition for Rehearing Denied Oct.
10, 1968, Certiorari Denied Feb. 24, 1969, See 89
S.Ct. 877.
 
 Mr. John R. Hess, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Charles T. Duncan, Corporation Counsel, Hubert B. Pair, Principal Asst. Corporation Counsel, and Richard W. Barton, Asst. Corporation Counsel, were on the brief, for appellant in Nos. 21,091 and 21,092 and appellee in No. 21,126.
 Mr. I. Irwin Bolotin, Washington, D.C., with whom Messrs. Philip J. Lesser and Gerald Herz, Washington, D.C., were on the brief, for appellee in No. 21,092.
 Mr. Henry Lincoln Johnson, Jr., Washington, D.C., for appellant in No. 21,126 and appellee in No. 21,091.
 Before EDGERTON, Senior Circuit Judge, and BURGER and MCGOWAN, Circuit judges.
 McGOWAN, Circuit Judge:
 
 
 1
 These appeals are the issue of a tragic accident which occurred at about 3:30 in the afternoon of August 1, 1960, in the swimming pool located at the Banneker Playground in the District of Columbia. Two lifeguards went to the aid of a swimmer in difficulty because of electric current suddenly coursing through the water. The swimmer was killed, as was one of his would-be rescuers. The other guard was injured. In Nos. 21,091 and 21,092, the District of Columbia appeals from awards in the District Court of damages against it in favor, respectively, of the estate of the deceased lifeguard, and of the guard who survived.[1] In No. 21,126, the first of these appellees complains of the District Court's reduction in amount of the damage award made to it by the jury. We do not reach the questions presented by this last appeal because we have been unable to find any adequate basis for the imposition of liability upon the District of Colunbia. We have, accordingly, concluded that the judgments against it must be set aside.
 
 
 2
 * The two lifeguards involved in the accident, Thomas and Wynn, were employed as such by Government Services, Inc., a private non-profit corporation which has leased and operated the pool since its initial construction in 1934 by the National Capital Parks Division of the United States Department of the Interior. From 1948 to 1950 the Banneker recreation area-- then, as now, situated on land owned solely by the United States-- was renovated and new facilities were added. The swimming pool, for example, was completely rewired at that time. At about the same time the entire recreation area, except for the swimming pool, was turned over by the United States to the District of Columbia for management and operation. Government Services, Inc., continued to be the lessee-operator of the pool, with responsibility for its inspection and maintenance. It provided janitorial service, and its own manager was present whenever the pool was in use.
 
 
 3
 The pool was open three months a year, with admission to the public on a fee basis. The playground area generally was operated the year round by the District. One of the recreational activities sponsored by the District in the summer time was the giving of free swimming lessons on weekday mornings from 9:00 to 12:00. During these hours, the District was required to provide its own lifeguarding service. It did this by hiring, for these hours alone, the regular guards employed by Government Services, Inc. Payment for these services was made directly to the guards by the District. This was the only responsibility for management and operation in respect of the swimming pool assumed by the District during its limited use of the pool.
 
 
 4
 The accident did not occur in the morning during the District's swimming lesson period. It happened in the afternoon, and it was caused by defective wiring in the underwater lighting system. Water seeping into a lighting installation had rotted the insulation, causing the return wire to burn out. The first segment of this wire immediately attached to the lighting installation was too small under code standards, and, for this reason, it burned out before it could trip the circuit breaker.[2]
 
 
 5
 To carry out its pool maintenance and inspection responsibilities in the electrical field, Government Services, Inc., retained an independent electrical contractor. He had inspected the light fixtures and replaced bulbs only a few days before the accident, but had not reported any defective wiring. The pool underwater lights had, at the time of the accident, been inadvertently turned on in the daytime by the electrician's young son, who was helping his father repair lights in the pump house.
 
 
 6
 Since the accident occurred in the course, and by reason of, their employment, Thomas and Wynn were compensated by Government Services, Inc., as required by the Longshoremen and Harbor Workers' Compensation Act, 33 U.S.C. 901-950 (1964), which Congress has made applicable to private employment in the District. 36 D.C. Code 501 (1967). Suits were brought, in addition, against Potomac Electric Power Company and the District of Columbia.[3] A verdict was directed for the former at the close of all the evidence, but this relief was denied the District. The jury verdicts followed, and the District's motions for judgment notwithstanding were denied.
 
 II
 
 7
 The District Court thought to find a foundation for the District's liability in the circumstance that it maintained 'an establishment of a public nature to which it invites the public;' and it characterized the management of the pool as a 'dual operation' since 'during the morning hours the pool was operated by the District of Columbia.' This latter characterization is not borne out by the record facts. The District provided lifeguards during the free swimming classes offered by it on weekday mornings but its management or supervision of the pool did not extend beyond this. It cannot, upon any principle of actual control or operation, be regarded as having exercised such control over the pool in the morning as to make it answerable for an accident occurring in the afternoon.
 
 
 8
 The District Court, as its first formulation implies, seems to have rested mainly upon a theory that, because the pool was located in a recreational area both apparently and actually operated in large part by the District, one using the pool might have conceived of himself as an invitee of the District and assumed that the District was taking due care for his safety. This approach would certainly have much to be said for it in the case of one injured while attending the District-sponsored swimming lessons in the morning. One who encourages others to attend functions or to use facilities need not always have actual control in order to be held liable for injuries suffered by those who respond affirmatively to such encouragement. See Watford by Johnston v. Evening Star Newspaper Co., 93 U.S.App.D.C. 260, 211 F.2d 31 (1954).
 
 
 9
 One who gives a dance in a hotel ballroom may possibly be liable to his guests for the unsafe condition of the premises, but he hardly remains liable to the guests of the hotel on the succeeding evening. And this proposition need not be couched in the familiar terminology of invitors and invitees in order to command assent. It simply would not be rational, in terms of normal expectations and reliances, to protect a liability so broadly.[4]
 
 
 10
 It is unquestionably true that the legal relationships at Banneker are somewhat tangled because of the special and dominant connection which the United States has long maintained vis-a-vis the swimming pool. The record here is not too informative as to what impressions an afternoon or week-end paying patron of the pool might have entertained with respect to which unit of government he was doing business with. There is no occasion to say now that under no circumstances could such a person have rationally expected that the District of Columbia was responsible for the safety of his swim.
 
 
 11
 But we do not deal here with such a member of the public. Both Wynn and Thomas were employees of Government Services, Inc., and they were on the premises at the time of the accident because of this relationship-- not because they had bought a ticket for a swim in a recreational facility which might plausibly be thought by an outside patron to be under the aegis of the District of Columbia. There is nothing in this record to suggest that Thomas and Wynn did not understand their employer's relation to the pool as compared with the District's, or that they were unaware that injuries in the course of their employment would be compensable under the law applicable to their employment relationship with Government Services, Inc. There is certainly nothing to indicate that they relied upon any supposition that the District of Columbia provided an additional source of compensation for work-connected injuries.
 
 
 12
 The record indicates to us that the District had no actual control or responsibility relevant to the cause of the accident. And, at least insofar as pool employees of Government Services, Inc., are concerned, it fails to provide the wherewithal to construct, in all reasonableness, a duty derived from appearance rather than reality.[5]
 
 
 13
 The judgments appealed from by the District of Columbia in Nos. 21,091 and 21,092 are reversed; and the appeal in No. 21,126 is dismissed as moot.
 
 
 14
 It is so ordered.
 
 
 
 [1]
 It appears that the estate of the deceased swimmer sued the United States, Government Services, Inc., and the District of Columbia. The complaint against the District was dismissed before trial with the consent of all parties, and the other defendants effected a settlement
 
 
 [2]
 The circuit breaker was located in the basement of the bath house which was part of the pool operation handled by Government Services, Inc. A No. 8 wire cable went from the circuit breaker down to the junction box at the side of the pool. From this point to the lights there ran the inadequate No. 16 wire. The upper floor of the bath house was devoted to adult recreational uses under the direction of the District
 
 
 [3]
 At the instance of Wynn, the electrical contractor hired by Government Services, Inc., and the latter's workmen's compensation carrier were joined as defendants, but the suit was dismissed as to both prior to trial
 
 
 [4]
 The significance of apparent relationships may be greater where the issue is not the degree of care owed but whether there is any basis at all for constructing a duty. Compare Levine v. Katz, (Decided May 14, 1968). In any event, the finding of a duty here necessarily involves a review of the evidence with respect to the District's actual control of the pool, as well as the inferences with respect to the District's responsibilities for safety which could be reasonably drawn by the pool employees of Government Services, Inc. To conclude that inferences as to the District's responsibility for safety might be more rational in the case of paying patrons is certainly to explore the concept of invitation. In any event, the end result is always a reflection essentially of what seems reasonable under all the circumstances
 
 
 [5]
 Appellee Wynn, although not appellee Thomas, urges that affirmance may rest upon the District's failure to discharge its statutory responsibilities to inspect electrical wiring generally. 1 D.C.Code 719-723. This was not, however, the theory upon which the claims were brought, tried, or submitted to the jury. Thomas' complaint says nothing on this score, and Wynn's complaint charges the District only with 'failing to make and/or require proper and adequate inspections of the electrical system, including the equipment and fixtures at said swimming pool. * * *' That this was a reference to the District's alleged duty arising from its relationship to this particular pool seems clear from Wynn's assertion at the pretrial proceedings
 that Banneker Swimming Pool was a public recreation facility in the District of Columbia, and therefore the District of Columbia had a duty to see that it was maintained in a safe condition for use by the public.
 In his opening statement at trial Wynn's counsel alluded to the fact that the District had not inspected the installation 'although the District has the only inspection authority in the District of Columbia authorized it make inspections.' The District's counsel rejoined that the District had no 'authority to go on federal property to inspect.' The trial judge repeatedly announced throughout the trial, with the seeming concurrence of appellees' counsel, that under the law 'District of Columbia inspectors don't inspect Federal buildings.' Whether this is true in law or fact, no evidence was offered by appellants on this point or on any basis which would support this theory of liability.