Ralph D. SMITH and Thelma Smith,
Appellants,

v.

ARBAUGH'S RESTAURANT, INC.,
a body corporate.

No. 23748.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 14, 1971.

Decided June 30, 1972.

Rehearing Denied Jan. 5, 1973.

98

Mr. Harry W. Goldberg, Washington, D. C., with whom Messrs. Max M. Goldberg and Morris Altman, Washington, D. C., were on the brief, for appellants.

Mr. Edward C. Donahue, Rockville, Md., with whom Mr. E. Gwinn Miller, Rockville, Md., was on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

BAZELON, Chief Judge:

This is an appeal from a jury verdict for the appellee after trial on appellant Smith's claim that Arbaugh's negligently maintained a set of greasy metal stairs on which he fell and was injured. The relevant facts are not in dispute.

On March 4, 1966, the appellant Ralph Smith, a Health Inspector in the employment of the District of Columbia, was directed by his supervisor to inspect the barbecue kitchen in appellee's restaurant. A grease fire had occurred in one of the barbecue pits several weeks previously, and the purpose of the inspection was to determine whether kitchen repairs had been completed.

The barbecue kitchen was located in the basement of a building adjacent to the premises of the actual restaurant. Large quantities of spareribs were barbecued in two pits in the basement, transported up approximately twenty metal steps and carried into the kitchen of the restaurant building to be stored before serving to patrons.

On his tour of inspection, appellant Smith descended these metal stairs to examine the barbecue pits. Just before reaching the bottom, his left foot skidded out from under him and he fell backwards, losing his grip on the handrail. Smith landed on his back and bounced to the bottom of the stairs. As a result of this fall, Smith was hospitalized, lost substantial amounts of time from work, incurred large medical expenses, and eventually retired on disability from his employment.

Smith and his wife commenced this action in the District Court seeking $65,000.00 in damages for personal injury and loss of consortium resulting from the negligence of the defendant corporation in creating, and failing to correct or warn the plaintiff of, a hazardous condition on its premises—namely, worn, wet and slippery metal steps with accumulated grease thereon. Trial was held in May of 1969. Both Smith and his supervisor testified that they had observed grease on the steps, which were also smooth and rounded from continuous wear. James Lane, the barbecue cook, testified for the defendant and substantiated the story of Smith's fall. He also stated that cartons of uncooked spareribs were delivered to the barbecue kitchen twice a day. At the close of the trial, the jury returned a verdict in favor of the defendant.

Smith moved for a new trial on the grounds that the trial court erred in instructing the jury to determine for itself whether Smith was a "business invitee" or merely a "licensee" on Arbaugh's premises, and thus whether Arbaugh's owed him the duty of care to keep the premises reasonably safe or merely the duty of warning him of any known but concealed dangers.[1] This motion was denied.

1. At trial, Smith made a timely objection to the court's instruction. The trial court had first ruled that Smith was a business invitee, since he went upon the property for the benefit of Arbaugh's. Appendix at 13. Then the judge instructed the jury that "the invitee . .

has a right to assume that the premises that he is invited to enter are reasonably safe for the purpose for which the invitation is extended."

Without a pause, the court instructed the jury as to the duty of care owed to a licensee, "a person on the property

Smith maintained on appeal[2] that the undisputed facts reveal the business purpose of his visit to Arbaugh's, and that therefore the trial court should have ruled as a matter of law that he was a "business invitee" toward whom Arbaugh's owed a duty of reasonable care.[3] He contends that the verdict in favor of the defendant could have been based on the jury's erroneous decision that Smith was instead a "licensee" toward whom a lesser duty is owed, and that he is therefore entitled to a new trial with proper jury instructions.

## I.

In examining this contention, we are once again struck by the awkwardness of fitting the circumstances of modern life into the rigid common law classifications of trespassers, licensees, and invitees. More importantly, we do not believe the rules of liability imposed by courts in the eighteenth century are today the proper tools with which to allocate the costs and risk of loss for human injury.

Ordinarily, liability for negligence is based on the failure to exercise reasonable care in the conduct of one's personal activities.[4] However, the landowner/occupier's[5] duty of care— the actions he should take by reason of dangerous conditions on his property— depends solely on the circumstances of the injured party's entry onto his property.[6] To the trespasser, the landowner owes a duty only to refrain from

. . . of another not by invitation or permission but rather by perserverance." The judge stated:

"The Court, ladies and gentlemen, would like to clarify for you one point that it has made to you. The Court, a few moments ago, instructed you that the plaintiff in this case was an invitee. The question of whether he is an invitee or a licensee is entirely within your discretion. So that, the Court will retract the statement made to you that the Court by law states that the plaintiff is an invitee. It is for you to determine under all of the facts and all of the circumstances whether he is an invitee or a licensee." Appendix at 14–15.

Smith contends that his status was a matter of law for the judge himself to determine.

2. Smith also objects to the judge's instruction that if the jury found that there was a foreign substance on the staircase, that it must also find that someone in charge "had sufficient time to ascertain that condition." This instruction is in full accord with our decisions in Seganish v. District of Columbia Safeway Stores, Inc., 132 U.S.App.D.C. 117, 120, 406 F.2d 653, 656 (1968); Safeway Stores, Inc. v. Preston, 106 U.S.App.D.C. 114, 269 F.2d 781 (1959); Brodsky v. Safeway Stores, Inc., 80 U.S.App.D.C. 301, 152 F.2d 677 (1945).

3. It is generally held that if the undisputed facts establish the stauts of an entrant, the court should rule as a matter of law as to what duty of care is owed to the injured party. Arthur v. Standard Engineering Co., 89 U.S.App.D.C. 399, 402, 193 F.2d 903, 906, cert. denied, 343 U.S. 964, 72 S.Ct. 1057, 96 L.Ed. 1361 (1952). This causes many cases to be decided prior to their submission to the jury. *See* notes 34 and 35, *infra*.

In Smith's case, although the precise question does not seem to have been decided in the District of Columbia, *cf.* Dashields v. W. B. Moses & Sons, 35 App.D.C. 583 (1910), it is generally the rule that health inspectors are business invitees. *See* 2 F. Harper and F. James, The Law of Torts, § 27.12 at 1482 (1956) [hereinafter Harper & James].

4. *See, e. g.,* Restatement, Torts 2d §§ 282, 283 (1965); 2 Harper & James, § 27.1 at 1430.

5. Formulations of the rules of liability use the terms "landowner" and "landoccupier" interchangeably. Generally it is the party in possession of real estate to whom the special rules apply. Restatement, Torts 2d § 328E. The occupier may or may not be the owner of the property but for the sake of clarity we consistently use the term "landowner" in this opinion to refer to the party in possession. *See* 2 Harper & James, § 27.2 at 1433; Comment, Land Occupant's Liability to Invitees, Licensees, and Trespassers, 31 Tenn.L.Rev. 485 (1964).

6. 2 Harper & James, § 27.1 at 1430; Restatement, Torts 2d §§ 333–350; and *see, e. g.,* Firfer v. United States, 93 U.S.App.D.C. 216, 219, 208 F.2d 524, 527 (1953).

intentional, wanton or willful conduct and from maintaining a "hidden engine of destruction."[7] Toward a licensee, the landowner must refrain from active negligence, which includes failure to warn of known but hidden perils.[8] Only for the invitee must the landowner exercise ordinary care and prudence to render his premises reasonably safe for the visit.[9] These distinctions are crucial for a plaintiff's case, since whether Arbaugh's will be held liable for maintaining its greasy stairs will depend not on the jury's evaluation of this conduct, but largely on whether the injured party happened to be an employee, a Health Inspector, a fireman, a patron invited to the kitchen or simply a curious child.[10]

■ Rather than continue to predicate liability on the status of the entrant, we have decided to join the modern trend[11] and to apply ordinary princi-

ples of negligence to govern a landowner's conduct: A landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.[12]

## II.

Almost fifteen years ago, the United States Supreme Court commented on the decreasing viability of the common law approach to landowner liability in a case dealing with a shipowner's duty to those aboard his vessel. In deciding whether to import into admiralty law the distinction between the duty owed an invitee and a licensee, Mr. Justice Stewart wrote for the Court:

> The distinctions which the common law draws between licensee and invi-

7. Daisey v. Colonial Parking, Inc., 118 U.S.App.D.C. 31, 32, 331 F.2d 777, 778 (1963); Firfer v. United States, *supra* note 6, 93 U.S.App.D.C. at 219, 208 F.2d at 528; Arthur v. Standard Engineering Co., *supra* note 3, 89 U.S.App. D.C. at 401, 193 F.2d at 905.

8. Firfer v. United States, *supra* note 6, 93 U.S.App.D.C. at 219, 208 F.2d at 528; Gleason v. Academy of Holy Cross, 83 U.S.App.D.C. 253, 254, 168 F.2d 561, 562 (1948).

9. Arthur v. Standard Engineering Co., *supra* note 3, 89 U.S.App.D.C. at 401, 193 F.2d at 905; Schwartzman v. Lloyd, 65 App.D.C. 216, 82 F.2d 822 (1936).

10. The need to fit diverse fact situations into neat categories produces both complex reasoning and harsh results. *See, e. g.*, District of Columbia v. Thomas, 130 U.S.App.D.C. 365, 401 F.2d 430 (1968), cert. denied 393 U.S. 1088, 89 S.Ct. 877, 21 L.Ed.2d 781 (1969), [lifeguard electrocuted saving child who was also killed by an electric current passing through swimming pool caused by defective wiring. Court held that as employee of Government Services, Inc., lifeguard could not rely on District of Columbia to take due care for his safety]; Kinney v. Sun Oil Co., 437 Pa. 80, 262 A.2d 128 (1970), [fireman injured by defective gas tank explosion while fighting fire on premises could not recover, whereas passerby might]; West v. Shizuko Tan,

322 F.2d 924 (9th Cir. 1963), [restaurant patron, "invitee" as to dining room, was "mere licensee" as to band platform on which piano she was permitted to play was located and from which she fell]. Wandering children, however, are treated with special consideration. McGettigan v. National Bank of Washington, 115 U.S.App.D.C. 384, 320 F.2d 703, cert. denied 375 U.S. 943, 84 S.Ct. 348, 11 L.Ed.2d 273 (1963).

11. In Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 631, 79 S.Ct. 406, 410, 3 L.Ed.2d 550 (1959), the Supreme Court noted that the common law was moving toward "imposing on owners and occupiers a single duty of reasonable care in all the circumstances." At the vanguard of this movement are the Supreme Courts of California, Hawaii and Colorado which have decisively abolished the differences between common law categories. *See* Rowland v. Christian, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968); Pickard v. City and County of Honolulu, 51 Haw. 134, 452 P.2d 445 (1969); Mile High Fence Co. v. Radovich, 489 P.2d 308 (Colo.S.Ct. 1971). In England, the distinction between licensees and invitees has long been abolished. Occupiers' Liability Act, 5 & 6 Eliz. 2, c. 31 (1957).

12. *See* Daisey v. Colonial Parking, Inc., *supra* note 7, 118 U.S.App.D.C. at 33, 331 F.2d at 779, and p. 18 *infra*.

tee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism.

\*     \*     \*     \*     \*     \*

For the admiralty law at this late date to import such conceptual distinctions would be foreign to its traditions of simplicity and practicality. . . . [Such] appears particularly . . [Such] appears particularly unwarranted when it is remembered that they originated under a legal system *in which status depended almost entirely upon the nature of the individual's estate with respect to real property,* a legal system in that respect entirely alien to the law of the sea.[13]

We believe that the common law classifications are now equally alien to modern tort law, primarily because they establish immunities from liability which no longer comport with accepted values and common experience.[14] Perhaps the protection afforded to landowners by these rules was once perceived as necessary in view of the sparseness of land settlements, and the inability of owners to inspect or maintain distant holdings. The prestige and dominance of the landowning class in the nineteenth century contributed to the common law's emphasis on the economic and social importance of free use and exploitation of land over and above the personal safety of those who qualified as trespassers or licensees.[15]

Today, the preeminence of land over life is no longer accepted. Human safety may be more important than a landowner's unrestricted freedom. "A man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose." [16]

This realignment of values is being recognized in all of tort law. There is a general trend away from immunities conferred on certain classes by reason of their technical status.[17] The law of products' liability has become a field of strict liability,[18] and there is continual movement away from *fault* as the governing principle for allocation of losses, in favor of enterprise liability or the distribution of losses over a larger segment of society through insurance.[19] There is no sound reason to immunize landowners from the community's perception of values.[20]

We do not believe, as the concurrence suggests, that the problem of allocating

---

13. Kermarec v. Compagnie Generale Transatlantique, *supra* note 11, 358 U.S. at 630–632, 79 S.Ct. at 410 (emphasis added).

14. *Accord,* Rowland v. Christian, *supra* note 11, 70 Cal.Rptr. at 103, 443 P.2d at 567.

15. This is the generally accepted explanation for the development of the common law classifications. 2 Harper & James, § 27.2 at 1432 n. 13; Kermarec v. Compagnie Generale Transatlantique, *supra* note 11, 358 U.S. at 630–632, 79 S.Ct. 406, 3 L.Ed.2d 550.

16. Rowland v. Christian, *supra* note 11, 70 Cal.Rptr. at 104, 443 P.2d at 568. *See generally* W. Prosser, Torts § 58 at 368 (3d ed. 1964); Comment, *supra* note 5, at 486.

17. 32 A.L.R.3d 508, 513 n. 4, 5 & 6. *Cf.* Elgin v. District of Columbia, 119 U.S. App.D.C. 116, 337 F.2d 152 (1964).

18. Restatement, Torts 2d § 402A; 2 Harper & James §§ 28.15–.28.

19. For a general discussion of this movement *see* Prosser, *supra* note 16, § 3; 2 Harper & James §§ 13.1–.7.

20. Whether these values point towards mandatory, no-fault, or self-insurance principles is beyond the scope of our decision at this time. Our primary concern is to abolish the rigid, court-imposed immunities which are out of keeping with current common law trends.

"[T]he traditional rule confers on an occupier of land a special privilege to be careless which is quite out of keeping with the development of accident law generally and is no more justifiable here than it would be in the case of any other useful enterprise or activity." 2 Harper & James, § 27.3 at 1440.

the costs and risks of human injury is a simple one. Nor do we believe that one value—human safety—should be advanced above all others. We recognize that the allocation of costs requires the resolution of a complex equation, one for which society has not as yet provided a computer. Rather, for centuries the costs of personal negligence have been allocated by a jury according to the standard of reasonable care under all the circumstances.

This court has frequently recognized that questions which involve moral and empirical judgments are best handled by representatives of the community as a whole,[21] specifically in cases involving landowner responsibilities to children of tender years.[22] Therefore, in the absence of legislative action to the contrary, we believe that the most effective way to achieve an allocation of the costs of human injury which is acceptable to the community is to allow the jury to function under the standard of "reasonable care under all the circumstances."

If immunities from liability are to exist, they should be based on consideration of factors which are relevant in modern society and unrelated to classifications of trespassers, licensees and invitees. In the words of the California Supreme Court, the jury should consider "the closeness of the connection between the injury and the defendant's conduct, the moral blame attached to the defendant's conduct, the policy of preventing future harm, and the prevalence and availability of insurance."[23]

Beyond establishing immunities, the common law labels and the varying duties of care attached to them may have once provided relevant standards of foreseeability of presence to guide the jury in determining what was reasonable conduct for the landowner.

The realities of modern life teach us that these labels are today irrelevant to the jury's task. Personal status no longer depends on one's relation to real property.[24] With urbanized society comes closer living conditions and a more gregarious population. The trespasser who steps from a public sidewalk onto a private parking lot today is not the "outlaw" or "poacher" whose entry

---

21. *Cf.* Robinson v. Diamond Housing Corp., 150 U.S.App.D.C. 17, 463 F.2d 853 (1972) ; *cf.* United States v. Bennett, 148 U.S.App.D.C. 364, 460 F.2d 872 (1972).

22. McGettigan v. National Bank of Washington, *supra* note 10, 115 U.S.App.D.C. at 388–389, 320 F.2d at 707–708. An early statement of the values involved was made in Eastburn v. Levin, 72 App. D.C. 190, 192, 113 F.2d 176, 178 (1940) :
    The underlying question is whether it is better to let occupants arrange their premises in total disregard of neighboring children, or to require them to take such precautions as a normal person would when their premises are attractive and insidiously dangerous to children too young to look out for themselves and when the intrusion of such children is likely. On the one side is the occupant's interest, and the general interest, in the profitable use of land. On the other is the child's interest, and the interest of his parents and of society, in life and limb and in compensation for their injury. Imposing responsibility is more apt to make

occupants careful than denying responsibility is to make children careful; occupants may know little about law, but children know nothing about it, and children will play where they can. And the liability in question is less exceptional than is sometimes supposed. Rather, the immunity of occupants of land, so far as immunity persists, from responsibility for unreasonably dangerous conditions is one of the exceptions to the growing and healthy tendency of the law to require all social conduct to conform to social standards.
    *See also* 2 Harper & James, § 27.5 at 1450–51.

23. Rowland v. Christian, *supra* note 11, 70 Cal.Rptr. at 103, 443 P.2d at 567.

24. "The kinds of wealth dispensed by government consist almost entirely of those forms which are in the ascendancy today. To the individual, these new forms, such as a profession, job, or right to receive income, are the basis of his various statuses in society, and may therefore be the most meaningful and distinctive wealth he possesses." Reich, The New Property, 73 Yale L.J. 731, 739 (1964).

was both unanticipated and resented in the nineteenth century. It is contrary to reason to accept as a settled principle of law that a parking lot owner actually varies his conduct according to the status of those who walk across his boundaries.[25]

### III.

A further indication that the classifications have become increasingly difficult to apply is that the current trend in modern tort law is a process of erosion of the once sharply defined categories into "increasingly subtle verbal refinements, . . . subclassifications among traditional common-law categories, . . . [and] fine graduations in the standards of care which the landowner owes to each."[26] There are two reasons for this: first, the harsh results produced by rigid classification cause courts to broaden certain classifications[27] and expand the duties owed;[28] and second, this expansion has produced even further confusion and conflict and a toleration of exceptions which apply only to individual cases.[29]

We are concerned to avoid continued harshness and inequity, and to reduce current confusion in the law of the District of Columbia.[30] The result we reach today is that to which the process of erosion will eventually lead.[31]

An examination of the law in the District reveals the difficulties which confront the courts. Harshness results because the essential task of judging a landowner's conduct under prevailing community standards is removed from the province of the jury.[32] Through mo-

---

25. Rowland v. Christian, *supra* note 11, 70 Cal.Rptr. at 104, 443 P.2d at 568.

26. Kermarec v. Compagnie Generale Transatlantique, *supra* note 11, 358 U.S. at 630, 79 S.Ct. at 410.

27. Most noticeably, public guests have been moved gradually into the category of "invitee" in many jurisdictions. *See, e. g.,* Lunney v. Post, 248 So.2d 504 (D.Ct.App.Fla.1971); 2 Harper & James § 27.12 at 1480.

28. Thus the concept of "active" negligence toward licensees has expanded to include what might otherwise be called a "condition" of the premises. *See* examples cited in Rowland v. Christian, *supra* note 11, 70 Cal.Rptr. at 101, 443 P.2d at 565, and 2 Harper & James § 27.6. Conditions of concealed danger have been fitted within the theory of a "concealed trap," and "highly dangerous" has been diluted to "unreasonably dangerous." *Id.* § 27.3 at 1443–44.

29. What results is a "patchwork" of confusion (1969). Note, 44 N.Y.U.L.Rev. 426, 427. *See* examples cited in Mile High Fence Co. v. Radovich, *supra* note 11, 489 P.2d at 311–312. Special exceptions still apply to conditions of "extreme" danger, Ward v. Thompson, 57 Wash.2d 655, 359 P.2d 143 (1961), and to cases involving children, Gould v. DeBeve, 117 U.S.App.D.C. 360, 330 F.2d 826 (1964); Louisville Trust Co. v. Nutting, 437 S.W.2d 484 (S.Ct.Ky. 1968).

30. This court has frequently noted that the current trend has aimed toward a single standard of care. *See, e. g.,* Hecht Co. v. Jacobsen, 86 U.S.App.D.C. 81, 180 F.2d 13 (1950); Daisey v. Colonial Parking, Inc., *supra* note 7, 118 U.S.App. D.C. at 33–34, 331 F.2d at 779–780; Elgin v. District of Columbia, *supra* note 17, 119 U.S.App.D.C. at 121, 337 F.2d at 157; John B. Kelly, Inc. v. Dunnett, 130 U.S.App.D.C. 150, 151, 397 F.2d 711, 712 (1968); Levine v. Katz, 132 U.S. App.D.C. 173, 175, 407 F.2d 303, 305 (1968).

We cannot predict with accuracy the effect this trend has had, or will have, on the frequency of litigation or the incentives to self-insure. Our primary concern is to provide the jury with relevant and useful standards under which to resolve today's litigation.

31. Such was also the reasoning of the Colorado Supreme Court:

"Commentators have suggested numerous reasons to abandon the system; however, those which now compel this court to act are (1) that the system creates confusion and judicial waste, and (2) that by preventing the jury from applying changing community standards to a landowner's duties, a harshness which is inappropriate to a modern legal system has been preserved."

Mile High Fence Co. v. Radovich, *supra* note 11, 489 P.2d at 311–312.

32. Even when the case does reach the jury, it is "often for consideration of the plain-

tions for dismissal, for directed verdicts, and for judgment notwithstanding the verdict, courts resolve the issue of liability solely on the facts which establish the status of the person injured.[33] Mechanical legal decisions made by judges eliminate jury scrutiny of the actual conduct of the visitor [34] and the landowner.[35]

An unwillingness to tolerate harsh results has led courts to expand certain categories of visitors and to create overlap between them. We have drawn a distinction between "bare licensee" and "licensee by invitation" in order to extend the duty of reasonable care to injured parties who could not qualify as "invitees" under District of Columbia law.[36] This reliance on semantic complexity must be compared with the Supreme Court of Hawaii's abolishing the distinction and holding that the stand-ard of reasonable care applied in every case.[37]

This court has also placed trespassers who diverge from public highways into the category of licensees because of the obvious absurdity of treating them as unforeseeable "wrongdoers" in the context of modern urban life.[38]

In Gould v. DeBeve,[39] in order to uphold the obviously equitable verdict which the jury had returned in favor of a two-year old "trespasser" who fell out of a loosely screened window, this court recognized that "types" of trespassers exist and must be differentiated. The opinion indicated that the foreseeability of the child's presence might justify the imposition of a higher standard of care on the landowner than is usually owed to trespassers, but left the test of liability essentially unchanged.[40] To our way of

tiff's status rather than for the more fundamental question of whether the defendant has acted carelessly. Thus the jury is deprived of the flexibility necessary to allow it to assess the burden of liability on the facts of each case in accord with community standards." Note, supra note 29, at 430. The case before us presents a clear example of this principle, since the jury's primary task was to determine whether Smith was an invitee or licensee.

33. See, e. g., Rowland v. Christian, supra note 11, 70 Cal.Rptr. 97, 443 P.2d 561 (summary judgment) ; Firfer v. United States, supra note 6, 93 U.S.App.D.C. 216, 208 F.2d 524 (complaint dismissed) ; Arthur v. Standard Engineering Co., supra note 3, 89 U.S.App.D.C. 399, 193 F.2d 903 (directed verdict).

34. By affirming dismissal of the complaint on its own interpretation of the facts, this court deprived the jury of the opportunity to determine for itself whether Firfer had exceeded the scope of his invitation in trying to leave the Jefferson Memorial from the back. Firfer v. United States, supra note 6, 93 U.S.App. D.C. at 220–221, 208 F.2d at 528–529.

35. In Nimetz v. Shell Oil Co., 74 F.Supp. 1 (D.D.C.1947), the court, in denying a motion for a new trial, insisted on classifying as a trespasser a party who fell into an open grease pit in defendant's gas station after parking on the station grounds, although private cars had on prior occasions been parked there by persons attending the Uline Arena.

36. See Gleason v. Academy of Holy Cross, supra note 8, 83 U.S.App.D.C. 253, 168 F.2d 561; Newman v. United States, 248 F.Supp. 669 (D.D.C.1965).

37. Pickard v. City and County of Honolulu, supra note 11, 51 Haw. 134, 452 P.2d 445, dealt with a man off the street who used the restroom in a public courthouse with the permission of the officer on guard. As he entered, the lightswitch did not work and he fell into a hole in the floor. Reversing the trial court's instruction that the plaintiff was a licensee as a matter of law, the Supreme Court held : "Common law distinctions between classes of persons have no logical relationship to the exercise of reasonable care for the safety of others . . . . [The] occupier of land has a duty to use reasonable care for the safety of all persons reasonably anticipated to be on the premises, regardless of the legal status of the individual." Id. at 446.

38. See Daisey v. Colonial Parking, Inc., supra note 7, 118 U.S.App.D.C. 31, 331 F.2d 777 ; Muldrow v. Daly, 117 U.S. App.D.C. 318, 329 F.2d 886 (1964).

39. Supra note 29, 117 U.S.App.D.C. 360, 330 F.2d 826.

40. Id. at 364, 330 F.2d at 830.

thinking, this approach will only generate further confusion over the duty owed to various "types" of trespassers.[41] Some doubt already exists over the duty owed social guests and other licensees.[42]

## IV.

■■ It is the genius of the common law that it recognizes changes in our social, economic, and moral life. Legal classifications such as trespasser and licensee are judicial creations which should be cast aside when they are no longer useful as controlling tools for the jury.[43] The principle of stare decisis was not meant to keep a stranglehold on developments which are responsive to new values, experiences, and circumstances.[44] In our opinion, the time has come to put an end to our total reliance on these common law labels and to allow the finder of fact to focus on whether the landowner has exercised "reasonable care under all the circumstances." That standard contains the flexibility necessary to allow the jury to take account of the infinite variety of fact situations which affect the foreseeability of presence and injury,[45] and the balance of values which determines the allocation of the costs and risks of human injury.

■ Eliminating reliance on the common law classifications does not leave the jury awash, without standards to guide its determination of reasonable conduct. The principles which are now to be applied are those which have always governed personal negligence under our jurisprudence.[46] The factors to be weighed in the determination of the degree of care demanded in a specific situation are "the likelihood that [the landowner's] conduct will injure others, taken with the seriousness of the injury if it happens, and balanced against the interest which [the landowner] must

41. *Accord*, Rowland v. Christian, *supra* note 11, 70 Cal.Rptr. at 105, 443 P.2d at 569.

42. *Compare* Benedict v. Podwats, 57 N.J. 219, 271 A.2d 417 (S.Ct.N.J.1970), *with* Solon Service, Inc. v. Cook, 96 U.S.App. D.C. 25, 223 F.2d 317 (1955); Kinney v. Sun Oil Co., *supra* note 10, 437 Pa. 80, 262 A.2d 128, *with* Scottish Rite Supreme Council v. Jacobs, 105 U.S.App. D.C. 271, 266 F.2d 675 (1959).

43. *See, e. g.*, Selected Writings of Benjamin Nathan Cardozo 148, 170–72 (Hall Ed. 1947); Note, 44 N.Y.U.L.Rev. 426 (1969); Bowles v. Mahoney, 91 U.S. App.D.C. 155, 161–163, 202 F.2d 320, 326–328 (1952), cert. denied, 344 U.S. 935, 73 S.Ct. 505, 97 L.Ed. 719 (1953) (dissenting opinion of Judge Bazelon).

44. *Cf.* Javins v. First National Realty Corp., 138 U.S.App.D.C. 369, 428 F.2d 1071 (1970). *Compare* Note, 41 U.Colo. L.Rev. 167 (1969), *with* the Colorado Supreme Court's decision in Mile High Fence Co. v. Radovich, *supra* note 11, 489 P.2d 308.

45. *Cf.* Hecht Co. v. Jacobsen, 86 U.S.App. D.C. 81, 83, 180 F.2d 13, 15 (1950).

46. Commentators agree that such standards should be applied. *See* Hughes, Duties to Trespassers: A Comparative Survey and Revaluation, 68 Yale L.J. 631 (1959); Note, *supra* note 29, 44 N.Y. U.L.Rev. 426; Note, *supra* note 44, 41 U.Colo.L.Rev. 167. "[The] likelihood of presence, with its consequent probability of harm, is . . . the proper basis of liability . . . ." 2 Harper & James § 27.9 at 1471.

Courts which have considered California's adoption of these principles have cited no compelling reasons for rejecting them.

A Florida lower appellate court stated only that it could "foresee difficulties" in the "case by case approach." Lunney v. Post, *supra* note 27, 248 So.2d at 507. One dissenter in New Jersey queried if the status of the injured party is an "element bearing on the question of liability," how this was to be explained to the jury without practically returning to the status concept? Benedict v. Podwats, *supra* note 42, 271 A.2d at 418 n. 1 (dissenting opinion of Hall, J.) This problem is handled by formulating the relevancy of the circumstances of a plaintiff's entry strictly in terms of the foreseeability of his presence. *See* p. 106 *infra*.

A few judges have cited the California decision with approval:

Ives v. Swift & Co., 183 N.W.2d 172, 178 (S.Ct.Iowa 1971) (concurring opinion of Becker, J.); Di Gildo v. Caponi, 18 Ohio St. 2d 125, 247 N.E.2d 732, 736 n. 2 (1969) (Schneider, J.).

sacrifice to avoid the risk,"[47] and the jury should be so instructed.

Thus, we do not hold that landowners are now insurers of their property,[48] or that they must endure unreasonable burdens to maintain it.[49] We do hold that the status of an entrant onto the property is not solely determinative of the duty of care owed him.

Of course, the circumstances of the visitor's entry have some relation to the question of landowner liability. Foreseeability of the visitor's presence determines in part the likelihood of injury to him, and the extent of the interest which must be sacrificed to avoid the risk of injury.

Nor do we think that the status of the landowner should exclusively define the duty of care he owes to those who enter his property. The concurring opinion suggests that we apply the standard of "reasonable care under all the circumstances" to owners of business establishments but retain the common law classifications and duties for owners of residential property. Beyond creating new problems of drawing lines between these "types" of property-owners,[50] such a distinction would also prolong the squabbles over the duty owed by homeowners to firemen vs. building inspectors, to door-to-door salesmen vs. habitual trespassers, to social guests who help with the housekeeping vs. those who don't[51]—all of which seem exceedingly awkward attempts to fit the circumstances of modern life into common law categories.

Furthermore, the harsh results which the concurrence predicts upon application of the standard of reasonable care to homeowners of limited means and apartment dwellers need never occur. There is sufficient flexibility retained in the determination of what is reasonable "under all the circumstances" for the jury to avoid undue harshness. In certain cases there may well be, as Judge Leventhal would hold, "rough common sense" to the notion that a host should take no greater care of his social guests than of his own family. If so, the jury can find the host's conduct "reasonable." On the other hand, the jury might consider that a host must be more careful towards those who have no notice of

---

47. Conway v. O'Brien, 111 F.2d 611, 612 (2d Cir. 1940) (L. Hand, J.).

48. This seems to the consistent fear of grocery store owners. This court has repeatedly stated that the elements of negligence must be established before a plaintiff will be entitled to recover. Thus what we stated in Seganish v. District of Columbia Safeway Stores, Inc., *supra* note 2, 132 U.S.App.D.C. at 119–120, 406 F.2d at 655–656, fully defines the duty of a landowner and is one model of an instruction for a jury:

A [landowner] is not an insurer of the condition of his [property]. His duty is to exercise reasonable care to keep [his property] safe [in view of the foreseeability of the presence of others on his land]. He is responsible, of course, for injuries resulting from risks created personally or by his employees. Moreover, his obligation of due care extends to reasonable supervision and inspection of the premises to identify and protect against potential perils [in view of the probability of injury to others]. For this reason, liability may also spring from a negligent failure to safeguard against dangers born of the activities of [others]. But negligence can be found in relation to a [visitor]-created hazard only if it is known, or because of its duration should have been discovered, in time to afford a fair opportunity to remove it. (Footnotes omitted).

And, of course, the defense of contributory negligence is always available to the landowner.

49. The jury should also be charged that landowners are not expected to "assume burdens of care which are unreasonable in the light of the relative expense and difficulty to them as weighed against the probability and seriousness of the foreseeable harm to others." Daisey v. Colonial Parking, Inc., *supra* note 7, 118 U.S.App.D.C. at 34, 331 F.2d at 780.

50. *See, e. g.,* Lunney v. Post, *supra* note 27, 248 So.2d 504, (member of Garden Club injured during tour of private home opened gratuitously to Club by homeowner).

51. *See* Benedict v. Podwats, *supra* note 42, 271 A.2d 417.

any dangers or defects. Also, what might be a "reasonable" maintenance burden for one homeowner may require unreasonable sacrifices for another. We cannot set these standards in the abstract. All these considerations are crucial to the jury's evaluation of the degree of care demanded "under all the circumstances" of a specific situation.

All three factors to be balanced by the jury—the likelihood and seriousness of injury, and the sacrifice required to avoid the risk—"are practically not susceptible of any quantitative estimate, and the second two are generally not so, even theoretically. For this reason a solution always involves some preference, or choice between incommensurables, and it is consigned to a jury because their decision is thought most likely to accord with commonly accepted standards, real or fancied." [52]

Since we see our task in this field as being the promotion of the resolution of negligence disputes according to community standards of acceptable behavior, it is no more proper for us to dictate to the jury what standards govern owners of residential property than what governs owners of business property. The reasoning of our decision today admits of no distinctions between landowners, since what is "reasonable" for any landowner, of necessity, varies with the circumstances of each and every case.

Accordingly, appellant Smith is entitled to a new trial at which the jury is instructed that Arbaugh's owed him the duty of maintaining its property in a condition reasonably safe under all the circumstances. Whether or not Arbaugh's breached this duty is for the jury to resolve.

Reversed and remanded.

LEVENTHAL, Circuit Judge, concurring:

The majority understands this case to pose a clear conflict in values: the value of human safety on the one hand, and the value of a landowner's unrestricted exploitation of his property on the other. With all respect, I believe this overly simplifies the issues. What is ultimately at issue here is not "people" versus "property," but rather how to allocate the costs and risk of loss for human injury.

Those who advocate change in the rules governing the liability of persons controlling real property frequently refer to the commercial and industrial necessities of modern life, and the strong differences from the pastoral life of yesteryear. I am completely convinced as to the reasons of policy which would lead the court to announce an end to the differential duties of a possessor of land with respect to trespassers, invitees or licensees, where the land is used as a business establishment. I am not so clear as to the broader sweep of the majority's rule. I therefore limit myself to concurring in the result, and to a separate statement of my reasons.

The use of the common law distinctions with respect to business establishments is mischievous because, in the context of a business establishment, it is generally almost impossible to tell the trespassers from the licensees, or either from the invitees. If a man scales the fence and uses my back yard as a shortcut, I have little difficulty in saying he is a trespasser, on my premises without my consent. But if he takes a shortcut through my parking lot or store, classification is beclouded. While a businessman may not prefer his premises to be used as a thoroughfare, he does value goodwill of individuals, often prospective customers. In the totality, such goodwill is a business asset. Given the probable ambiguity of the status of anyone on business property, I am satisfied that the proper rule in such circumstances is one which gives the jury broad latitude to affix liability under a general standard of reasonable care in all of the circumstances of the case. I assume it is understood that the "circumstances" of

52. Conway v. O'Brien, *supra* note 47, 111 F.2d at 612.

the case include the factual and legal relationships of the parties. Presumably the jury will not be awarding verdicts to burglars.

A second factor which underscores a change of rule as to business establishments is the matter of loss-distribution. The costs of foreseeable harms can, in a business context, be distributed among all customers by means of insurance or self-insurance.

However, this loss-distribution capability does not necessarily apply in non-business situations. The occupier of residential property is not in a position to distribute either the costs of foreseeable losses or the cost of insurance against those losses. He must bear such costs himself.

Today's decision exposes many less-affluent homeowners—whose modest home represents their major capital asset—and apartment dwellers, to lawsuits not previously permitted, where there is no concealed defect—e. g., a sliding rug. It may increase the costs of insuring against such risks, and it may increase the risks of not insuring at all. This may not be sound public policy. Furthermore, the rule may be unwise insofar as it permits recoveries, where insurance is available, with the too-ready acquiescence of the owner or resident of the home or apartment. In the broad, I am concerned that this rule of law may furnish incentives for redressing loss through litigation, and a corresponding disincentive for persons to insure *themselves* against losses due to personal injury.

As to residential premises, while I see a good case for a rule that places business and social visitors on the same footing, I also discern some rough common-sense in the notion that a social guest, broadly, takes a host as he is, expecting that the host will take as much care of his guest as he takes of himself, and that he will point out latent defects. I certainly see some rough common sense in the broad notion that a householder has no legal duty, as to trespassers entering without his consent, to fill up holes and otherwise tidy up his property so that it is in reasonably safe condition—though this is a broad conception subject to limited exceptions*. I do not find these principles "awkward . . . in the circumstances of modern life" or contrary to "accepted values and modern experience." Perhaps my difficulty is that I have not studied these problems deeply enough. But then, they are not involved in the case at bar, and were not argued.

---

\* Compare Restatement Torts (Second) §§ 333–339.