45 F.3d 436
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Therese H. PAWLITZKE, Plaintiff-Appellant,
v.
DONALD B. MURPHY CONTRACTORS, INC., a Washington
corporation, d/b/a DBM, Defendant-Appellee
 No. 93-35707.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 4, 1994.
Decided Dec. 29, 1994.
 
 Before: WOOD, Jr.,* HUG, and TANG, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Plaintiff Therese H. Pawlitzke brought this diversity negligence action seeking damages for a serious spinal injury she received while employed on a construction project in Alaska. The district court allowed defendant's motion for summary judgment and dismissed all plaintiff's claims.
 
 
 3
 Our review of the summary judgment ruling is governed by well-known rules. Saul v. United States, 928 F.2d 829, 832 (9th Cir.1991). It is simplified in this case as there were no material facts disputed in the district court so a factual dispute cannot be created in this court. Our review is confined to whether or not the district court correctly applied the substantive law of Alaska which governs. Nevertheless the facts must be examined in detail in order to understand plaintiff's theories.
 
 FACTUAL BACKGROUND
 
 4
 On April 2, 1988 plaintiff went to work as a laborer for Conam Construction Company ("Conam"), the general contractor on a construction project at Atlantic Richfield Company's ("ARCO") oil production facility on Alaska's "north slope." Three days later she fell into a forty-foot hole thirty-two inches wide, one of a number being drilled by subcontractor Donald B. Murphy Construction Company ("DBM"). Conam under its contract with ARCO was installing gas flares used to burn off excess gas from oil production. Conam, however, subcontracted to DBM the drilling of the holes, which is the first step in the installation of the flares.
 
 
 5
 By Conam's contract with ARCO, Conam was specifically assigned, as the general contractor, the duty to make the work site safe for all employees. It also had that responsibility under Alaska law. Conam in its subcontract with DBM specifically retained most of this responsibility for safety at the work site. DBM's safety responsibilities were limited. After drilling a hole where marked by survey stakes placed by ARCO's engineers, DBM was to cover the hole with a sheet of plywood measuring four feet by four feet and three-fourth inches thick. These sheets were provided by Conam for DBM's use as covers in accordance with industry practice. The edges around the completed hole were first shovelled level so the cover would lie flat. DBM employees would then shovel tailings onto the edges of the cover when in place to keep the wind from moving it. The survey stake was stuck upright into a mound of snow and tailings piled on top the in place cover. These stakes or hole markers gave the specifications of the hole to be drilled. They were about four feet high and painted a day-glow orange color at the top. When the hole was drilled and covered DBM would move its equipment and employees to the next hole to be drilled and repeat the process.
 
 
 6
 Once the hole had been drilled and marked with a stake Conam considered DBM's responsibility for that hole to be terminated. A Conam crew followed closely behind DBM to the freshly drilled hole, shovelled the tailings aside, removed the top, and began the installation of the pilings for the erection of the gas flares which extended above ground. No special warning signs or barricades or other safety measures at the hole were erected or taken by either Conam or DBM.
 
 
 7
 Plaintiff, in addition to various clean-up tasks at the work site, was part of a Conam crew with responsibility to uncover and prepare the hole after DBM had left the site. Plaintiff had observed other Conam employees preparing the holes for the next construction step and had herself participated in that work at several other holes. Her Conam labor supervisor reported she had been shovelling around other holes on the cold early morning shift on which her accident occurred. Only moments before she fell her supervisor had warned her, he says, to be careful around the particular hole into which she fell. Earlier between shifts DBM had held a meeting for its employees concerning hole safety. Conam employees were invited including plaintiff, but none attended.
 
 
 8
 The only eyewitness to the accident was Susan Metcalf, a Conam project engineer and roommate of plaintiff. In her statement she says that hole LP3 into which plaintiff fell was covered with the plywood cover and that a survey stake was upright in a clump of snow on top the cover. Plaintiff, she says, approached the cover, kicked the stake aside, picked up an edge of the cover, stepped forward, and fell in.
 
 
 9
 Another Conam employee, Fred Scott, identified as lead laborer for Conam's night shift, said plaintiff was assigned to his crew. The crew's job was to uncover the hole, erect scaffolding, lower-in pilings, set pilings and supports, and shovel tailings from around the holes. He had directed plaintiff to shovel around other holes recently drilled by DBM not long before moving to where DBM had just finished the hole into which plaintiff fell. He says he warned her to be careful around the holes only seconds before she fell.
 
 
 10
 Plaintiff's deposition varies only slightly from those witness accounts. She was hired as a skilled worker and as a "gofer," terms she uses interchangeably. Her duties she described as cleaning up debris and building scaffolding. During her three or four days on the job she shovelled pilings around some of the holes to level the ground prior to the holes being covered. She admitted that Mr. Scott had warned her to be careful around the holes, and she understood care was required to avoid falling in a hole. She removed the stake from the top of the cover on hole LP3 by kicking it aside. Other stakes she described as "sticking really up." The hole cover she characterized as debris. Plaintiff was aware that ARCO and Conam wanted to drop the pilings into hole LP3 before her night shift ended a little later that morning. She explained she did not look under the cover as she lifted it and before stepping forward. She personally knew no DBM employees, but she saw them with the DBM drilling rig. She observed their drilling and putting the covers over the holes. DBM, she said, did not supervise or direct her work.
 
 LEGAL ISSUES
 
 11
 The court held DBM was not guilty of negligence per se since it retained no control over the hole after DBM drilled it and moved on. Therefore the Alaska General Safety Code ("G.S.C.") was inapplicable. Plaintiff argues, however, that DBM was subject to that code and relies on Bachner v. Rich, 554 P.2d 430 (Alaska 1976).
 
 
 12
 In Bachner the injured plaintiff was an employee of a subcontractor working on a scaffold that collapsed allegedly due to the negligence of the general contractor who erected it. The G.S.C. issue was raised and the court held that the trial judge had discretion as to whether or not to adopt the safety standards of that enactment as the standard of care in that negligent action. The G.S.C. was held applicable in that case because the G.S.C. specifically dealt with constructing scaffolds, and once being found applicable, then it became a factual jury question. The apparent factual distinctions and the holding render Bachner of no help to plaintiff.
 
 
 13
 Plaintiff nevertheless argues that DBM was negligent per se because it violated three provisions of the G.S.C. which were applicable. Those provisions all require some form of a barrier or a warning sign be erected to warn those in the vicinity of the danger.[1] Plaintiff suggests, for instance, that a hole cover with a hinged opening would comply with the code, but the impracticability of that in these particular circumstances is apparent. Thus, plaintiff argues the G.S.C. defines the relevant standard of care and because DBM violated each of these provisions, it was statutorily negligent.
 
 
 14
 DBM responds that the G.S.C. does not apply as Exxon v. Alvey, 690 P.2d 733 (Alaska 1984), disposes of Pawlitzke's argument that DBM had the duty to warn and failed to do so. DBM asserts that under Exxon and Sec. 385 of the Restatement (Second) of Torts, DBM fulfilled its duty not only to plaintiff, but to Conam as well by covering the holes and erecting the stakes before it left the site. Further, DBM contends that if the G.S.C. does apply, which it disputes, it applies only to Conam, the general contractor, and not to it as the subcontractor.
 
 
 15
 The district court agreed, and held that in light of Restatement (Second) of Torts Secs. 384 and 385, if the G.S.C. provisions did apply, they would apply only to Conam. Therefore, it would have been Conam's responsibility to safeguard the hole areas, and in determining what safeguarding measures were required, the G.S.C. would have been given consideration. If DBM, however, did maintain control over the area, the G.S.C. could then apply to it. The district court found, however, that DBM was not in control and therefore bore no responsibility to comply with the G.S.C.[2] Plaintiff disagrees as to whether or not DBM retained control over the holes after it covered them with the plywood covers and moved on.
 
 
 16
 Restatement (Second) of Torts Sec. 384 provides that one who, on behalf of the possessor of land, creates an artificial condition on the land, is liable to another who is injured by the dangerous character of that condition while the work is still in his charge. Restatement (Second) of Torts Sec. 384. Plaintiff argues that Sec. 384 applies because it can be interpreted to mean that if you create a dangerous condition and you are still working in the general area, as was DBM, then you will continue to be responsible. Thus, plaintiff concludes that DBM retained control and responsibility for the hole because after the hole was completed by DBM, DBM continued to work in the general area although at a different hole site.
 
 
 17
 Plaintiff also argues that Alaska case law imposes a common law duty on an employer to provide a safe worksite, as articulated by the G.S.C., that extends to all employees on the site. See Parker Drilling Co. v. O'Neill, 674 P.2d 770, 776 (Alaska 1983); Bachner v. Rich, 554 P.2d 430, 443 (Alaska 1976); State v. Marathon Oil, 528 P.2d 293, 297 (Alaska 1974).
 
 
 18
 In determining whether the G.S.C. may apply it must be shown, among other things, that the party being sued retained some control over the area where and when the injury occurred. See Dahle v. Atlantic Richfield Co., 725 P.2d 1069, 1072 (Alaska 1986); Parker Drilling Co. v. O'Neill, 674 P.2d 770, 776 (Alaska 1983). If it is shown the party did retain some control over the hazardous area at the time of the injury, then the G.S.C. may be applied by the court in some circumstances to define the standard of care. If that control exists, then liability may result by showing the party allegedly in control did not give adequate warnings, or that the injured party did not have actual knowledge of the dangerous condition. See Exxon v. Alvey, 690 P.2d 733, 737 (Alaska 1984).
 
 
 19
 Plaintiff's argument that the G.S.C. applies, therefore, must fail. Plaintiff did not show that DBM retained any control over the hole after it finished drilling. The court concluded there was no issue of material fact in dispute as to control. Conam's Project Manager explained that the procedure always had been that DBM's duties were completed once the hole was finished and it moved on and Conam moved in. Based on Alaska case law and the evidence before the court, the district court did not err in finding that G.S.C. did not apply. The court did state that if the G.S.C. was applicable it would be applicable to Conam, the party responsible for the area in which its employee was injured.
 
 
 20
 The court also considered Restatement Sec. 385. Section 385 provides that if a person creates an artificial condition on behalf of the possessor of land, and that condition is accepted, the person creating the condition may still be held liable unless there is adequate warning or actual knowledge of the condition. Restatement (Second) of Torts Sec. 395. The court held that Sec. 385 did apply, but that DBM's duty to warn was satisfied. The court found that in applying Sec. 385 the duty to warn was DBM's duty to warn Conam, not the plaintiff, of the dangerous condition unless Conam had actual knowledge. The court determined that since Conam hired DBM to drill the holes, and followed DBM in doing its own work on the holes, Conam appreciated the dangerous risks, and therefore Conam had adequate warning. Conam had accepted that responsibility from the beginning and fully understood it. Plaintiff as well had actual knowledge of the associated risks because of her prior work around the holes and a Conam supervisor had warned her. Thus DBM was also entitled to judgment under Sec. 385.
 
 
 21
 The court's holding is consistent with Alaskan case law. In Moloso v. State, 644 P.2d 205, 219-220 (Alaska 1982), the court held that a landowner has a duty to warn employees of an independent contractor working on the premises about latent hazardous defects; however, either an adequate warning to the contractor or the contractor's own full knowledge of the condition is sufficient to discharge the landowner's responsibilities to the employees. This principle was reiterated in Exxon v. Alvey, 690 P.2d 733, 737 (Alaska 1984).
 
 
 22
 Plaintiff also objects to the court's finding that DBM did not breach a general duty of "reasonable care." The district court impliedly found that DBM had not breached its general duty of "reasonable care" because the court granted summary judgment in favor of DBM. Plaintiff argues that under Alaska law, there exists a duty of reasonable care when the defendant's conduct creates a foreseeable risk of harm. Plaintiff's position is that DBM created a foreseeable risk of injury when it covered the drilled holes with unmarked covers, and that it is the jury which should make the determination whether or not the conduct of DBM was reasonable under the circumstances. See Carlson v. State, 598 P.2d 969 (Alaska 1979). In Webb v. City and Borough of Sitka, the court adopted the rule that "[a] landowner or owner of other property must act as a reasonable person in maintaining his property in a reasonably safe condition in view of all circumstances including the likelihood of the injury to others, the seriousness of the injury, and the burden on respective parties of avoiding the risk." Webb v. City and Borough of Sitka, 561 P.2d 731, 733 (Alaska 1977) (citing Smith v. Arbaugh's Restaurant, Inc., 469 F.2d 97, 100 (D.C.Cir.1972)). This rule was extended to occupiers. Id. at 733 n. 5. The reasonable duty of care will be imposed when the risk is a foreseeable one. Division of Corrections v. Neakok, 721 P.2d 1121, 1125-26 (Alaska 1986).
 
 
 23
 DBM counters that it owes no general duty of care to the plaintiff because the extent of its duty was defined and limited in the Conam-DBM contract. The contract provided that Conam was responsible for all maintenance and the erection of barricades or guards or all other things needed to protect the work or workmen.
 
 
 24
 Plaintiff strongly claims that DBM improperly delegated to Conam the duty which it owed to plaintiff to provide a safe workplace. Plaintiff alleges that the provisions of the contract between DBM and Conam, which address the division of and responsibility for safety precautions at the drilling site, constitute an improper and invalid attempt on DBM's part to delegate to Conam the nondelegable duties--of reasonable care and those imposed by the G.S.C.--that DBM owed to plaintiff. DBM did not delegate responsibility to Conam as that was imposed on Conam by the ARCO-Conam contract.
 
 
 25
 In Sievers v. McClure, the Alaska Supreme Court held that the responsibility for safety and risks may be apportioned among contractors by contract. Sievers v. McClure, 746 P.2d 885, 888 (Alaska 1987). Further, the court in Hammond v. Bechtel, Inc., held that an employer may explicitly contract to retain control over safety procedures used by an independent contractor. Hammond v. Bechtel, Inc., 606 P.2d 1269, 1273 (Alaska 1980). It would have been impractical for DBM to assume control and be responsible for safety after it had turned the covered hole over to Conam, who followed DBM to erect the flare apparatus as the general contractor. The general contractor could not be expected to be subject to DBM's safety directions as subcontractor during the performance of its own major work at the site.
 
 
 26
 Alaska case law does establish that landowners or occupiers owe those who are on their property a general duty of "reasonable care." Therefore, DBM could be said to have owed plaintiff a duty of care. Although case law defines such a duty, DBM cannot be said to have breached the duty because it was shown that it was not in control of the area when the accident occurred. Therefore, even though Alaska case law may establish a duty, unless the party has retained some responsibility over the land, it cannot be liable for a breach of that prior duty.
 
 
 27
 Plaintiff raises for the first time the issue of the application of the doctrines of comparative fault versus contributory fault. Plaintiff did not mention the status of Alaskan law regarding these liability theories in her Complaint. Nor was this issue addressed in the district court during oral argument on DBM's motion for summary judgment. In fact, the district court expressly noted the absence of comparative negligence as an issue. In the context of a discussion regarding Sec. 385 of the Restatement (Second) of Torts, Judge Singleton noted:
 
 
 28
 In other words, the general question is not whether Ms. Paw[li]tzke understood the risks but, rather, whether the normal, reasonable person on the premises would have understood the risks, that Ms. Paw[li]tzke's knowledge would be relevant to her comparative negligence, not to the breach of duty of [DBM]. And, of course, there's no question that there's a substantial comparative negligence issue in this case, but it's not being addressed in this motion.
 
 
 29
 Plaintiff now raises the issue of the competing liability theories for the first time. That must fail for two reasons. First, "[i]t is a well-established principle that in most instances an appellant may not present arguments in the Court of Appeals that it did not properly raise in the court below." Rothman v. Hospital Serv. of S. Cal., 510 F.2d 956, 960 (9th Cir.1975) (citations omitted). "Nevertheless, no 'bright line rule' exists to determine whether a matter has been properly raised. 'A workable standard, however, is that the argument must be raised sufficiently for the trial court to rule on it.' " Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 515 (9th Cir.1992) (quoting In re E.R. Fegert, Inc., 887 F.2d 955, 957 (9th Cir.1989)).
 
 
 30
 It is true, however, that this general rule has recognized certain exceptions.
 
 
 31
 We have held that we may consider an issue raised for the first time on appeal if (1) there are "exceptional circumstances" why the issue was not raised in the trial court, (2) the new issue arises while the appeal is pending because of a change in the law, or (3) the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court.
 
 
 32
 United States v. Carlson, 900 F.2d 1346, 1349 (9th Cir.1990) (citations omitted). Plaintiff does not fall under any of these exceptions. The third exception is the closest to being applicable, but it fails nonetheless. Plaintiff has not demonstrated that DBM would suffer no prejudice as a result of her failure to raise this issue earlier as plaintiff has done nothing to "convince[ ]" this panel that DBM "would not have advanced different factual and legal arguments" had plaintiff properly raised this issue below and if DBM had had the chance to respond. Id. at 1349-50. Plaintiff did not afford the district court any opportunity to consider her present contention, but she could have.
 
 
 33
 Second, plaintiff has mischaracterized the holding of the district court. The district court did not, either directly or indirectly, rely on the concept of contributory negligence when it granted DBM's motion for summary judgment. Rather, as discussed above, the district court found that no genuine issue of material fact existed to counter the conclusion that DBM had fulfilled its duty under Sec. 385 of the Restatement (Second) of Torts to warn of unexpected dangers regarding the hole that plaintiff fell into.
 
 
 34
 DBM did not owe plaintiff any duties under the G.S.C. DBM did not breach any general duty of reasonable care that it owed to plaintiff, nor did it breach the more specific duties imposed by Secs. 384 and 385 of the Restatement. Furthermore, there is nothing inherently wrong as we have noted in the apportionment of safety precautions as between DBM and Conam.
 
 
 35
 Plaintiff has misinterpreted Alaskan law on the subject of non-delegable duties. In Jackson v. Power, 743 P.2d 1376, 1383 (Alaska 1987), the Supreme Court of Alaska stated that "[a] nondelegable duty is an established exception to the rule that an employer is not liable for the negligence of an independent contractor." One of the examples of a nondelegable duty cited by that court is providing employees with a safe place to work. Id. at 1383. This casts doubt on whether or not Conam could have delegated safety matters affecting its own employees to DBM. We do not need to reach that issue as Conam did not. In other words, the issue of nondelegable duties arises only in the vicarious liability context. Plaintiff did originally bring several vicarious liability claims against DBM, but later abandoned those claims and the district court dismissed them by stipulation.
 
 
 36
 DBM's characterization of the policy behind the nondelegable duty doctrine appears correct: The doctrine is designed to prevent owners or employers from shifting "downstream" especially important duties they hold to less accountable independent contractors. Id. at 1383-84; Alaska Airlines, Inc. v. Sweat, 568 P.2d 916, 925-926 (Alaska 1977). Plaintiff's situation is precisely the opposite; she is seeking to hold the subcontractor liable, despite the greater accountability of her employer, the general contractor.
 
 
 37
 DBM is not liable for plaintiff's unfortunate injury. The responsibility was Conam's, but Conam is not the defendant in this action.[3] This court is unable to grant plaintiff any relief.
 
 
 38
 AFFIRMED.
 
 
 
 *
 Honorable Harlington Wood, Jr., Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The three provisions of the G.S.C. Pawlitzke refers to are: G.S.C. Sec. 01.1201(a)(3) (yellow marker should be used to designate caution in hazardous areas); G.S.C. Sec. 01.1202(a)(1) (signs should be posted to define specific hazards that may result in accidental injuries); G.S.C. Sec. 01.1103(a)(7) (temporary floor openings should have standard railings, hinges or be constantly attended by someone)
 
 
 [2]
 The relevant portion of the trial transcript indicating that DBM was not in control can be seen in the court exchange with plaintiff's counsel:
 THE COURT: And do you think there is any evidence--in the record that they [DBM] maintained the ability to alter the status quo regarding that hole?
 MS. SAVILLE: Well, they could have, certainly I would think. I mean, there's no evidence they couldn't.
 
 
 [3]
 The record reveals that plaintiff collected workmen's compensation benefits of about $24,000 plus medical expenses